UNITED STATES of America, Plaintiff–Appellee,

v.

Wesley WILLIE, Defendant–Appellant.

Nos. 90–2028, 90–2041.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 1991.

Charles L. Barth, Asst. U.S. Atty., Las Cruces, N.M. (William L. Lutz, U.S. Atty., and Paula G. Barnett, Asst. U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee.

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M. (Wesley Willie, pro se, with her, on the briefs), for defendant-appellant.

Before ANDERSON, SETH and EBEL, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Wesley Willie appeals his conviction in district court of four counts of failure to file income tax returns for the years 1982 to 1985 in violation of 26 U.S.C. § 7203. We affirm.

Wesley Willie, a Native American, filed personal income tax returns in 1975, 1976 and 1977, receiving a refund in each year. He did not file in 1978 and filed a zero return in 1980. From 1982 to 1985, Willie also failed to file although he earned a substantial income each year[1] working on large commercial construction projects at various locations throughout the United States, far from his mailing address at the Navajo Nation in New Mexico. On his W–4 forms required for employment, Willie claimed numerous exemptions to which he was not entitled to avoid the payment of taxes. The IRS mailed a number of notices to Willie's address regarding his lack of filing. Subsequently, this action was brought in district court and Willie was found guilty by jury and convicted on all four counts of willful failure to file tax returns. He now appeals that conviction.

Willie has filed two briefs on appeal, one submitted by counsel and one *pro se.* Through counsel he argues that: (1) he was denied his right to a speedy trial; (2) he was denied his right to effective assistance of counsel; (3) the trial court erred in prohibiting the introduction of his exhibits; and, (4) the prosecution exercised its peremptory challenge to exclude one of two Native American jurors in violation of *Batson v. Kentucky.* In his *pro se* brief, he argues further that: (1) he lacked sufficient notice of the elements of the offense charged; (2) the United States lacks juris-

diction over Native Americans to enforce the income tax laws against them; (3) the judge engaged in prejudicial misconduct; and, (4) his petition for Writ of Habeas Corpus was illegally suspended.

I.

RIGHT TO SPEEDY TRIAL

 Willie claims that he was denied a speedy trial in violation of the Speedy Trial Act which requires that a defendant be brought to trial within 70 days of his arraignment. 18 U.S.C. § 3161(c)(1) (1985). Willie's trial began 227 days after his arraignment. However, certain periods of that time may be excluded in computing the allowable delay in commencing trial. 18 U.S.C. § 3161(h).

Delay resulting from the submission of any pretrial motion, "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," shall be excluded. 18 U.S.C. § 3161(h)(1)(F). Willie's first motion was filed on April 26. R. Docket Sheet, Doc. No. 2. The district court ruled on that and several subsequent motions without a hearing on June 7, but reserved consideration of Willie's motion to proceed *pro se* until it was "satisfied that Defendant fully recognizes the heavy duty that he undertakes in representing himself and, after being so advised, insists on representing himself." R.Vol. I, Tab 11. It is undisputed that the 44 days from the filing of Willie's first motion on April 26 to the court's disposition of all but the self-representation motion on June 7 should be excluded from the speedy trial calculation. The central question concerns the excludable time allowed for resolution of the *pro se* representation issue.

Willie argues that, although the court did not state that it was taking the motion under advisement on June 7, the motion was, in effect, taken under advisement to be ruled on at a later date. If under advisement, the maximum excludable delay for the court's determination is 30 days. 18 U.S.C. § 3161(h)(1)(J); *see United States*

---

**1.** In 1982, Willie's gross income was $21,579.79; in 1983, it was $32,976.61; in 1984, it was $16,- 926.66; and, in 1985, it was $13,963.56. Tr. at 233.

*v. Hines,* 728 F.2d 421, 426 (10th Cir.), *cert. denied,* 467 U.S. 1246, 104 S.Ct. 3523, 82 L.Ed.2d 831 (1984). We do not find, however, that the motion was taken under advisement.[2] Rather, the motion was still pending until trial when the district court discussed the difficulties of self-representation with Willie and made its final determination allowing Willie to proceed *pro se* at trial, with his appointed attorney acting as standby counsel. By that time, the court had apparently satisfied itself that Willie understood the difficulties of self-representation and still wished to conduct his defense *pro se.*

Although it is preferable for the court to hear motions at the earliest possible time, the entire time between the filing until the conclusion of the hearing is excludable, regardless of whether the delay was "reasonably necessary."[3] *Henderson v. United States,* 476 U.S. 321, 330, 106 S.Ct. 1871, 1876, 90 L.Ed.2d 299 (1986); *United States v. Gonzales,* 897 F.2d 1312, 1316 (5th Cir. 1990), *cert. denied,* — U.S. —, 111 S.Ct. 683, 112 L.Ed.2d 675 (1991); *United States v. Santoyo,* 890 F.2d 726, 728 (5th Cir. 1989), *cert. denied,* — U.S. —, 110 S.Ct. 2567, 109 L.Ed.2d 749 (1990); *United States v. Stafford,* 697 F.2d 1368, 1373 ns. 4, 5 (11th Cir.1983). Thus, the period from the filing of the first motion on April 26 to the court's final hearing and disposition of the representation motion at the beginning of trial on November 20 is excluded under 18 U.S.C. § 3161(h)(1)(F). *United States v. Tranakos,* 911 F.2d 1422, 1425–26 (10th Cir.1990); *see United States v. Santoyo,* 890 F.2d at 728; *United States v. Stafford,* 697 F.2d at 1374. Since only 19 days elapsed between the arraignment and the April 26 filing, Willie was not denied a speedy trial and we need not rule on his other speedy trial contentions.

## II.

## RIGHT TO REPRESENTATION BY COUNSEL

Willie argues that he did not make a knowing, voluntary and intelligent waiver of his right to counsel because he was inadequately informed of the hazards of self-representation. He also objects to the court's denial of his request near the close of trial for a substitution of his standby counsel without inquiry into the reasons for his dissatisfaction. R.Vol. III at 266–68. We disagree with both arguments.

A defendant has a constitutional right to waive his right to counsel and to represent himself at criminal trial. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *United States v. Allen,* 895 F.2d 1577, 1578 (10th Cir. 1990). However, to be valid, the trial judge must ensure that the waiver of counsel is "an intentional relinquishment or abandonment of a known right or privilege." *United States v. McConnell,* 749 F.2d 1441, 1450–51 (10th Cir.1984) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding *pro se.* *Faretta v. California,* 422 U.S. at 835, 95 S.Ct. at 2541; *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948); *United States v. Allen,* 895 F.2d at 1578; *Sanchez v. Mondragon,* 858 F.2d 1462, 1467 (10th Cir.1988). Regretta-

---

**2.** Even if we were to determine that the *pro se* motion had been taken under advisement, the 30–day advisement period does not begin to run until all necessary information is before the court. Excludable time includes "all time that is consumed in placing the trial court in a position to dispose of a motion." *Henderson v. United States,* 476 U.S. 321, 331, 106 S.Ct. 1871, 1877, 90 L.Ed.2d 299 (1986); *see United States v. Santoyo,* 890 F.2d 726 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 2567, 109 L.Ed.2d

749 (1990). The court clearly needed more information upon which to make its ruling. Until the court obtains that information, the advisement period does not begin to run.

**3.** The judge's discussion with Willie at trial prior to the completion of jury selection constitutes a hearing leading to the final resolution of Willie's motion. The sufficiency and adequacy of that hearing is a separate issue discussed below.

bly, the district court did not fully discuss these issues with Willie on the record. However, such deficiencies do not prompt us to automatically reverse the conviction where the surrounding facts and circumstances, including Willie's background and conduct, demonstrate that Willie actually understood his right to counsel and the difficulties of *pro se* representation and knowingly and intelligently waived his right to counsel. *United States v. Padilla,* 819 F.2d 952, 958 (10th Cir.1987) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *United States v. McConnell,* 749 F.2d at 1451; *United States v. Weninger,* 624 F.2d 163, 164 (10th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980).

■ The record indicates that Willie did understand his right to counsel and effectively waived that right. At the arraignment, Willie was notified of the charges against him and of the potential penalties involved. R. Arraignment Tr. at 6. He then asserted in a subsequent petition "that he will not accept any court-appointed attorney and objects to any attempt by the judge to violate that right." R.Vol. I, Tab 6. In addition, Willie submitted at least ten pretrial *pro se* petitions to the court, including amended pleadings, a motion to deny the government's request for reciprocal discovery, a Petition in Abatement, two Motions to Dismiss, and two sets of jury instructions. Before the completion of jury selection at trial, the judge urged Willie to consult with his standby counsel given the difficulties of *pro se* litigation and the com-

plexity of the legal process.[4] At that hearing, the court allowed Willie to represent himself, having apparently satisfied itself after observing Willie's conduct and reviewing his numerous petitions throughout the preceding months that Willie understood the difficulties of *pro se* representation and still insisted on representing himself. *See* R. Vol. I, Tab 11 (court refused to rule on motion to represent himself until satisfied that Willie understood the difficulties of such representation). Upon review of the record, we do not find that decision to be erroneous.

This case is similar to *United States v. Weninger,* 624 F.2d 163 (10th Cir.1980), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980), where a tax protestor chose to represent himself after multiple urgings and pleas by the district court to retain counsel. On the day of trial, Weninger stated that he would retain counsel, but he needed a 120–day continuance to do so. The trial court denied the request as unreasonable. The next day, Weninger told the court that he had engaged counsel. For unknown reasons, the lawyer was never retained and Weninger continued to represent himself. This court found that Weninger "had no intention of hiring a lawyer unless the lawyer agreed with his views about the invalidity of tax laws." *Id.* at 166.

The record as a whole indicates that, although Weninger was made "aware of the dangers and disadvantages of self-representation," he strategically chose to

---

4. THE COURT: Let me tell you something, Mr. Willie. Mr. Willie, I know that it's your right to represent yourself. We have a lot of rules in Court that might not make too much sense to people, but it's the way the system works.

And I'm not intruding on your ability to represent yourself, that is your right, but I would encourage you to make as much use of Ms. Storch as you can. Ms. Storch is a highly competent lawyer.

However, she's not permitted to help you unless you ask her for help. Because if she volunteers help, then it's possible that on appeal that might—as I said before, that by a lawyer volunteering assistance without the defendant seeking it, that that can be a deprivation of your right to self-representation.

But I would encourage you to make as much use of Ms. Storch as you can, and do not be shy about it, and I just recommend that to you, okay?

MR. WILLIE: I did ask her to go ahead and sit at the table and help with the paperwork.

THE COURT: Okay.

MR. WILLIE: But other than that—

THE COURT: Well, fine.

MR. WILLIE: —we'll go from there.

THE COURT: And if anything occurs—and throughout the proceedings, if you decide that maybe you want to use her active participation, I surely would encourage that. And now you can consult with Ms. Storch if you wish to do so.

appear *pro se*. However, after the jury refused to uphold his patriotic protest against the federal income tax, Weninger retained counsel to contend on appeal that the conduct of his trial was constitutionally impermissible. We refuse to permit this type of game to be played with the courts. *We hold that Weninger's stubborn failure to hire an attorney constituted a knowing and intelligent waiver of the right to assistance of counsel.*

*Id.* at 167 (emphasis added) (citations omitted).[5]

Similarly, Willie's repeated and unequivocal assertions of his right to self-representation, his continuous stubborn refusal to accept the services of admittedly competent and available counsel, his numerous *pro se* petitions and his clear expression that he could only work with an attorney who shared his views on taxation, Tr. at 269, constitute a valid implied waiver of his right to counsel. *See United States v. Gallop,* 838 F.2d 105, 109 (4th Cir.) (refusal to proceed with able appointed counsel without good cause is a voluntary waiver), *cert. denied,* 487 U.S. 1211, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *United States v. Sarsoun,* 834 F.2d 1358, 1363 (7th Cir.1987) (failure to cooperate with court implied waiver of right to counsel); *United States v. Grosshans,* 821 F.2d 1247, 1251 (6th Cir.) (defendant knowingly waived right to counsel where she refused to obtain an attorney, intended to represent herself and where she was aware of disadvantages of self-representation as evidenced by numerous motions filed *pro se* ), *cert. denied,* 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 505 (1987); *Johnstone v. Kelly,* 808 F.2d 214, 216 (2d Cir.1986) (persistent requests to represent self was knowing, voluntary and unequivocal waiver of right to counsel); *United States v. Moore,* 706 F.2d 538 (5th Cir.) (persistent, unreasonable demand for appointment of new counsel is functional equivalent of knowing and voluntary waiver of counsel), *cert. denied,* 464 U.S. 859, 104 S.Ct. 183, 78 L.Ed.2d 163 (1983); *United States v. Gipson,* 693 F.2d 109 (10th Cir.1982) (defendant's delaying tactics of unreasonably refusing competent counsel could constitute waiver of counsel), *cert. denied,* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983); *see also Richardson v. Lucas,* 741 F.2d 753, 757 (5th Cir.1984) (numerous motions submitted *pro se* indicated defendant's familiarity with the legal system); *Wilks v. Israel,* 627 F.2d 32, 35 (7th Cir.1980) (defendant's unequivocal request to proceed *pro se* must be honored), *cert. denied,* 449 U.S. 1086, 101 S.Ct. 874, 66 L.Ed.2d 811 (1981).

Willie argues that *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990), a recent tax evasion case, controls his situation. This court held in *Allen* that the trial court's failure to conduct a searching pretrial inquiry of the defendant to ensure that his waiver of counsel was knowingly and intelligently made denied the defendant his right to counsel. However, unlike Willie, the defendant in *Allen* did not unequivocally assert his right to self-representation. Rather, he stated that he wished to obtain counsel and the trial court erroneously determined that his failure to retain an attorney by the commencement of trial was a voluntary waiver of his right to counsel. Allen did not actively attempt to represent himself as Willie has done. Rather, he submitted only a *pro se* motion for a continuance to permit him to retain an attorney and refused to put on a defense or participate at trial. In addition, even in that case, this court recognized that the defendant cannot use his right to counsel "to play a 'cat and mouse' game with the court, or by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." *United States v. Allen,* 895 F.2d at 1578 (quoting *United States v. McMann,* 386 F.2d 611, 618–19 (2d Cir.1967)). Such is the case here.

It appears that [the defendant], by his own deliberate and intentional actions, seeks to insert built-in error in these proceedings, so as to postpone a final

---

5. Of course, if the defendant cannot afford a lawyer, counsel will be appointed for him.

inquiry into his failure to comply with the tax laws of this country ... [H]e was following the scenario used by other tax protestors in discharging appointed counsel [in this case, declining to accept appointed counsel] and then contending unknowing waiver of counsel. *See United States v. Gillings*, 568 F.2d 1307 (9th Cir.), *cert. denied*, 436 U.S. 919, 98 S.Ct. 2267, 56 L.Ed.2d 760 (1978).

*United States v. Romero*, 640 F.2d 1014, 1016 (9th Cir.1981).

"[T]here must be some limit to the defendant's ability to manipulate the judicial system." *United States v. Gallop*, 838 F.2d at 111. Thus, even though the district court failed to make a comprehensive and probing formal inquiry into the knowingness and intelligence of Goddard's waiver, looking at the circumstances as a whole, the facts on the record are sufficient in this case to establish that Willie intelligently, knowingly and voluntarily waived his right to counsel.

■■■ Willie's second argument also fails. He contends that the trial court erred in denying his request for replacement counsel without inquiring into the reasons for his dissatisfaction thereby failing to ensure that he was not exercising a choice between incompetent counsel and appearing *pro se*. Appellant's Brief at 20 (citing *United States v. Silkwood*, 893 F.2d 245 (10th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 2593, 110 L.Ed.2d 274 (1990); *Sanchez v. Mondragon*, 858 F.2d 1462 (10th Cir.1988)). Since he has waived his right to counsel, he cannot now assert that the trial court erred in not replacing the attorney whose assistance he has waived. But even assuming that Willie had counsel, the trial court properly denied his request for replacement without inquiry. "[F]ormal inquiry is not essential 'where the defendant otherwise stated his reasons for dissatisfaction' on the record." *Sanchez v. Mondragon*, 858 F.2d at 1466 (quoting *United States v. Padilla*, 819 F.2d at 956 n. 1). Willie stated on the record that, while he did not question the competency or ability of his counsel, she was unacceptable because she "stated the

government's position." Tr. at 268–69. A defendant does not have a right to counsel who shares his political beliefs or who will blindly interpret the law as he would like. *United States v. Grosshans*, 821 F.2d at 1251; *United States v. Padilla*, 819 F.2d at 956; *United States v. Weninger*, 624 F.2d at 166. The choice between finishing the trial with admittedly competent counsel or proceeding *pro se* did not deny the defendant his right to counsel. *United States v. Padilla*, 819 F.2d at 955; *United States v. Grosshans*, 821 F.2d at 1251.

### III.

### EXCLUSION OF EXHIBITS

Willie next contends that the trial court erred in prohibiting him from introducing exhibits to show the basis for his belief that he was not required to file tax returns. Willie argues that the exhibits were relevant to show the sincerity of his good faith belief that he need not file a tax return and thereby were relevant to his defense that, because of that belief, he did not willfully violate the tax laws. He further argues that *Cheek v. United States*, — U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), requires the admission of the exhibits for that purpose.

The exhibits in question include the Constitution, a History of Congress dated 1792, pages of the session laws, a Navajo Treaty, the Coinage Act of 1965, and letters from the defendant to the Departments of Justice and the Treasury setting forth Willie's contentions that the tax laws do not apply to him. All were denied as irrelevant and improper documents to go to the jury. We affirm the trial court's decision to exclude the documents because, due to his inadequate offer of proof, Willie has failed to preserve the issue for appeal and the court's ruling did not constitute plain error. In the alternative, we affirm the district court because the documents were unduly confusing to the jury. In the further alternative, we affirm the conviction because any error in excluding the evidence was harmless beyond a reasonable doubt.

For the trial judge to correctly assess the value of the submitted evidence and for us to then properly review the court's exclusionary ruling, the proffering party must ensure that "the substance of the evidence [was] made known to the court by offer or [was] apparent from the context...." Fed.R.Evid. 103(a)(2). In addition, he must "make[ ] known to the court ... that party's objection to the action of the court *and the grounds therefor....*" Fed.R.Crim.P. 51 (emphasis added); *see Quinones v. Pennsylvania General Ins. Co.,* 804 F.2d 1167, 1170 (10th Cir.1986); *United States v. Martinez,* 776 F.2d 1481, 1485 (10th Cir.1985); *see also United States v. Hugh Chalmers Chevrolet–Toyota, Inc.,* 800 F.2d 737, 738 (8th Cir.1986); *United States v. Peters,* 732 F.2d 1004, 1010 (1st Cir.1984); *United States v. Jackson,* 700 F.2d 181, 190 (5th Cir.), *cert. denied,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).[6] In the case of documentary evidence and exhibits, as here, the substance of the evidence was presented to the court and is available for our review. The question we must now address is whether the purpose for which the evidence was offered was either clear from the context or sufficiently explained by Willie. If so, we review the trial court's ruling under the abuse of discretion standard. If not, then the issue has not been preserved for appeal and we may reverse only for plain error. Fed.R.Evid. 103(a)(2), (d).

The problem with the type of material offered by Willie is that it can have both a proper and an improper purpose insofar as it is intended to show the offeror's belief that he need not file income tax returns. "Belief" is a mischievous and tricky concept in this context. It is not a single-faceted idea, but is better defined as having both a normative and descriptive side. A normative belief is how Willie *wants* the law to be interpreted and ardently believes it *should* be interpreted. How he believes the law *is* constitutes a descriptive belief. Thus, while "[tax protestors] believe with great fervor [many] prepos-

terous things ...," *Coleman v. Commissioner of Internal Revenue,* 791 F.2d 68, 69 (7th Cir.1986), belief in their tax-free status, no matter how sincerely held, is not necessarily a defense to the government's claim of willfulness. Rather, only a belief possessing those characteristics that counter the elements of willfulness is a valid and relevant defense.

"Willfulness" is defined as the "voluntary, intentional violation of a *known legal duty.*" *Cheek v. United States,* 111 S.Ct. at 610 (emphasis added). To be a relevant defense to willfulness, then, Willie, because of his belief or misunderstanding, must not have known he had a legal duty. *Id.* at 611 (defendant must be "ignorant of his duty"). Thus, his belief must be descriptive—he must believe the law *does not* apply to him. A normative belief that the law *should not* apply to him leaves Willie fully aware of his legal obligations and simply amounts to a disagreement with his known legal duty and a "studied conclusion ... that [the law is] invalid and unenforceable." *Id.* at 612–13. In *Cheek,* the Supreme Court stated that "a defendant's views about the validity [or constitutionality] of the tax statutes are irrelevant to the issue of willfulness [and] need not be heard by the jury.... [I]t makes no difference whether the claims of invalidity are frivolous or have substance." *Id.* at 613. Thus, a defendant's good faith belief that he has no legal obligation to file and evidence showing the reasonableness of that state of mind is relevant. But, proof of the reasonableness of a belief that he should not have a duty only proves the reasonableness of the defendant's disagreement with the existing law and is, therefore, properly excluded as irrelevant.

It is apparent that it is a delicate task to differentiate between a belief that the law *should* be different and a belief that the law *is* different. The difficulty of discerning the often subtle distinctions is magnified by the fact that much of the

---

6. For a discussion of offers of proof in civil cases, see *Polys v. Trans–Colorado Airlines,* 941 F.2d 1404 (10th Cir.1991); *Reese v. Mercury* Marine Div. of Brunswick Corp., *793 F.2d 1416, 1421 (5th Cir.1986).*

same evidence can be used to prove both types of belief and because the word "belief" itself is used loosely in describing both sides of the dichotomy. As a result, the precise purpose for which the evidence is offered becomes crucial to the trial court's determination of admissibility, particularly in cases of this nature where the careless admission of evidence supporting both relevant and irrelevant types of belief could easily obfuscate the relevant issue and tempt the jury to speculate that the mere existence of documentary support for the defendant's position negates his independent knowledge that he has a legal duty. *Cf. Rigby v. Beech Aircraft Co.,* 548 F.2d 288, 292–93 (10th Cir.1977) (proof showing defective design of main tanks could easily mislead or confuse jury regarding relevant issue of defect in auxiliary tank). The defendant must, therefore, persuasively show the trial judge that the evidence is being offered for a permissible purpose by making a proffer of great specificity regarding the type of belief he seeks to prove. A mere statement that the evidence is submitted to show sincerity of belief is not enough. Without a particularized explanation the trial judge will likely focus on the impermissible aspects of the proffered material, and will be unaware of the possible limited purpose available to the offering party. This places the trial judge in an unfair predicament with respect to a ruling.

The record shows that Willie did not clearly differentiate a proper from an improper purpose for the proposed evidence so that the court could make an informed ruling. Indeed, the court's comments reveal Willie's failure to lay the groundwork for a ruling on the only proper ground. Willie offered his first exhibit during his testimony as follows:

MR. WILLIE: ... [H]ow I come to believe that I am not one required to file.

... [W]hen I was in high school, some of my teachers would say, well, the constitution says this, and these are not taxed, but I was not sure. They tell me that you might go to jail for not paying your taxes or not filing.

So those years, the high school years and about a year after that, I did file, because I was afraid if I was wrong in establishing that—when I went to school, I had—I read it, that Indians are not taxed.

Now I have to firmly establish, no [sic], that I'm right before I do anything that would put me here, like where I'm at right now.

. . . . .

[I]t's just research that I went through, kind of make me believe that I am not one required to file. I'm not one that's under the tax laws.

Okay, so when I started going into all the paperwork and stuff like that, I found out that these laws, what's stated on the books, are not—you cannot just take them by their face. They have to go back and find out, what did the legislature, how—what was their intention, why did they make that law.

So after they make it, I guess a lot of people can say, well, this is what it says, this is what it says, but the original intent, what's behind it, is what I went after.

Because I don't want to be wrong and some day have to suffer for it. So I went back into—well, all the way back into the 1500's when they first started—discovered Indians. Well, and there's documents there, but I don't have them with me.

And anyway, from those I went to the Congressional records or the Federal convention during the time they were trying to write up the constitution. Okay, and there, there was reference to Indians not being taxed or not being represented in either house of Congress, or so—and it was true.

So I have some documents here that during my research I came upon, that re-establish, reaffirm those convictions that I had on my being an Indian not taxed.

[Willie's Exhibit A (referring to the formation of the United States) excluded by the trial court as irrelevant in response to the prosecution's earlier objection to all of Willie's exhibits.]

So—and then that was—there was—I guess I can't bring it up to you, so they won't let me. Now, on—at that—in that same period when they were—we go to the same convention wherein—from the same document, what's in this document—

THE COURT: Mr. Willie, I'm not going to permit you to persist in this type of narrative. As I said, I am the Judge of the law, and what apparently you're trying to suggest or trying to tell the jury is that you found some law that is going to be different than what I later will announce to them.

So you go on and testify about any matter you wish, but you're not going to be able to testify that you found some sort of document to support your position.

MR. WILLIE: This is—so anything, any discussions pertaining to the constitution I can't use?

THE COURT: That's right.

MR. WILLIE: Okay, what about the actual laws itself?

THE COURT: I will instruct the jury on the law that applies in this case.

MR. WILLIE: Well, can I just bring out where it applies to me?

THE COURT: In what fashion?

MR. WILLIE: Well, in making me what I am, an Indian not taxed.

THE COURT: I will instruct the jury on all the law applicable to any issue in this case. You go ahead and go on and testify as to whatever you wish.

R.Vol. III at 261–265. Then, upon formal presentation of the remainder of his exhibits to the court, Willie stated only that, "This is my understanding of myself as an Indian not taxed." R.Vol. III at 271.

As the foregoing excerpts from the record indicate, Willie did not clarify whether his exhibits went to prove his understanding of the law as it *should be* or as he actually perceives it *to be*. Certainly, the context within which Willie submitted his exhibits did not clearly establish which belief Willie asserted. Thus, there is no ruling directed at the alleged purpose for the evidence. Accordingly, we have no rul-

ing to review and Willie has failed to preserve his claim for appeal. *United States v. Martinez*, 776 F.2d at 1485–86 ("Unless the context in which evidence is offered makes clear the *reason* for the proffer, error cannot be assigned to the exclusion of evidence without an offer proof.") (emphasis added); *see Polys v. Trans–Colorado Airlines*, 941 F.2d at 1408; *Reese v. Mercury Marine Div. of Brunswick Corp.*, 793 F.2d 1416, 1421 (5th Cir.1986) (citing *Huff v. White Motor Corp.*, 609 F.2d 286, 290 n. 2 (7th Cir.1979)); *Mills v. Levy*, 537 F.2d 1331 (5th Cir.1976); *cf. Quinones v. Pennsylvania General Ins. Co.*, 804 F.2d at 1170 (court unable to find abuse of discretion without proffer). Therefore, we may reverse only if we find plain error.

■ In reviewing for plain error, we note that the "failure to comply with normal requirements of offers of proof is likely to produce a record which simply does not disclose the error." Fed.R.Evid. 103 advisory committee note. This case particularly highlights that fact. Here, where evidence is admissible for one purpose but inadmissible for another, absent a sufficient foundation showing the precise permissible purpose for the evidence or egregious circumstances not presented by this case, the judge can do no wrong in excluding the evidence. To hold otherwise would place an undue burden on the court to seek after the purpose of the evidence or to imagine some admissible purpose for it without regard to the actual state of mind, motives, and purposes of the proponent. Since such circumstances do not create error, they are even less likely to create plain error. It is difficult to envision manifest injustice where a clearly improper purpose for proffered evidence is not ruled out and a foundation showing a proper purpose is not laid. Thus, we do not find plain error.

■ Willie argues that *Cheek v. United States*, — U.S. —, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), *requires* the admission of any evidence arguably relating to the objective reasonability of his belief. Appellant's Supplemental Brief at 5. We disagree. While the Supreme Court acknowledged that the reasonableness of the defen-

dant's belief may bear on the jury's determination of sincerity, the issue of admissibility of evidence was not before it. The Court held only that the jury should be instructed to determine the defendant's subjective beliefs as to the lawfulness of his actions, not that the trial judge must admit any and all evidence related to the basis of those beliefs.[7]

Willie and the dissent both make essentially a fairness argument that since, under *Cheek*, the government is "free to present" evidence of court decisions and Code provisions "to establish the unreasonableness of the defendant's asserted beliefs, ... the defendant should be able to introduce [similar] evidence ... to support the objective reasonableness of his beliefs...." Dissenting Opinion, at 1402. They rely on the following language from Cheek:

> the jury would be *free to consider* any *admissible evidence*.... showing that Cheek was *aware of his duty* to file a return ..., including evidence showing his *awareness of the relevant provisions of the code or regulations,* of court decisions rejecting his interpretation of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return forms and accompanying instructions that made it plain that wages should be returned as income.

*Cheek v. United States,* 111 S.Ct. at 611 (emphasis added). This excerpt, however, does not allow the government to present the court decisions, regulations or statutes themselves or testimony regarding their contents. Rather it only indicates that the jury could properly consider otherwise "admissible evidence" that the defendant was "aware" of those documents and, therefore, "aware" of his duty to file.

Thus, even if Willie had submitted an adequate proffer to the judge regarding the relevance of his belief and the evidence may have shown the basis for that belief, the admission of the exhibits would not be *required* under *Cheek.* Rather *Cheek,* while reinforcing this circuit's subjective standard in determining willfulness, did not abrogate other existing law regarding the admissibility of documentary evidence nor did it alter the trial court's traditional discretionary role in ruling on the admissibility of that evidence. *See United States v. Hairston,* 819 F.2d 971, 973 (10th Cir.1987) (direct testimony regarding effect of publications on defendant's understanding of tax law filing requirements more probative than publications themselves and court properly exercised its discretion regarding form of evidence). Furthermore, *Cheek* clearly did not require the admission of evidence absent compliance with procedural rules requiring an offer of proof sufficient to inform the trial judge of its purpose.

Although our holding on inadequate proffer grounds is dispositive, we hold alternatively that the exhibits were properly excluded under Fed.R.Evid. 403 because they were confusing, because the danger of the jury's misuse of the evidence for an improper purpose was great, and because the relevant point was provable by other evidence. *See* Fed.R.Evid. 105 advisory committee note ("A close relationship exists between this rule and Rule 403 which *requires* exclusion [in certain cases].... The wording of the present rule ... repel[s] any implication that limiting or curative instructions are sufficient in all situations.") (emphasis added); Fed.R.Evid. 403. Indeed, it appears that the court balanced the value of the evidence against its potential for confusion and tendency to detract from the dignity of the proceedings.[8] *See*

---

**7.** With regard to his letters to Treasury and Justice officials, Willie further argues that *United States v. Harrold,* 796 F.2d 1275 (10th Cir. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987), required their admission into evidence. However, while this court recognized in *Harrold* that the defendant's correspondence with senators and congressmen regarding the definition of income *may* have been relevant to the issue of willfulness, we did not determine that issue. Rather, our holding was based on

our determination that, regardless of their relevance, their exclusion was harmless. *Harrold* did not hold that letters from the defendant to congressmen regarding his interpretations of the tax laws are necessarily relevant and admissible.

**8.** The district court noted that the defendant, in his testimony regarding the exhibits, was "apparently ... trying to suggest or trying to tell the jury ... that [he had] found some law that is

*United States v. Daly*, 756 F.2d 1076, 1083 (5th Cir.) (affirmed district court's exclusion of expert testimony as irrelevant because court had sufficiently balanced its value under Rule 403), *cert. denied*, 474 U.S. 1022, 106 S.Ct. 574, 575, 88 L.Ed.2d 558 (1985). Therefore, after thorough review of the record, we defer to the court's implicit determination that the legal documents inappropriately argue the law and tended to "make a mockery of th[e] courtroom," and affirm, in the alternative, on those grounds.[9]

"[T]he law is given to the jury by the court and not introduced as evidence.... Obviously, it would be most confusing to a jury to have legal material introduced as evidence and then argued as to what the law is or ought to be."[10] *Cooley v. United States*, 501 F.2d 1249, 1253–54 (9th Cir. 1974) (excluded portions of Congressional Record, IRS Training Manual and Supreme Court opinions) (cited with approval in *United States v. Harrold*, 796 F.2d 1275, 1285 (10th Cir.1986), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987)), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *see United States v. Mann*, 884 F.2d 532, 538 (10th Cir.1989) (cases excluded because defendant's views more probative than their source); *United States v. Hairston*, 819 F.2d 971, 973 (10th Cir.1987) (citing with approval, *United States v. Kraeger*, 711 F.2d 6, 7–8 (2d Cir. 1983) (excluded federal court decisions)); *United States v. Harrold*, 796 F.2d 1275, 1285 (10th Cir.1986) (excluded Supreme Court opinions), *cert. denied*, 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987); *United States v. Mueller*, 778 F.2d 539, 540 (9th Cir.1985) (excluded Supreme Court opinions); *see also Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir.1988) ("In no instance can a witness be permitted to define the law of the case.") (en banc), *cert. denied*, 488 U.S. 1008, 109 S.Ct. 792, 102 L.Ed.2d 783 (1989). The law is the singular province of the judge. Juries only decide facts, to which they apply the law given to them by the judge. *See United States v. Daly*, 756 F.2d at 1083 ("judge is the jury's sole source of information regarding the law"). They may not decide what the law is and should not be given the opportunity to do so. *See Johnson v. Colt Ind. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir. 1986) (high potential that jury will be confused as to proper weight to give legal evidence and might assume that law presented is entitled to as much weight as the trial court's instructions since both emanate from courts).

The introduction of the Constitution or other historical documents as evidence, although facially attractive, argues the law as forcefully and is as confusing to a jury

---

going to be different than what [the judge would] later [ ] announce to them." R.Vol. III at 264; *see id.* at 265. Furthermore, in discussing the defendant's documents, the judge noted that although he would "allow everything within [his] power to permit [Willie] to put on a defense," he was "not going to have [Willie] make a mockery of this courtroom or of this system." *Id.* at 270.

**9.** We may affirm the decision of a lower court on other grounds supported by the record, even if not relied upon by the district court. *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988).

**10.** The dissent attempts to distinguish *Cooley v. United States* by arguing that it was decided at a time when proof of the defendant's subjective intent to violate the law was not required and "[t]hus, it was much less important in th[at] case[ ] that the jury consider legal documents upon which the defendant purported to base his subjective opinion of the law." Dissenting Opinion, at 1402–03. However, the trial court in

*Cooley* instructed the jury regarding the defendant's "good faith reliance upon his interpretation of the law." *Cooley v. United States*, 501 F.2d at 1254. Furthermore, *Cooley* was reaffirmed in a number of later cases. *United States v. Bergman*, 813 F.2d 1027, 1029–30 (9th Cir.), *cert. denied*, 484 U.S. 852, 108 S.Ct. 154, 98 L.Ed.2d 110 (1987); *United States v. Malquist*, 791 F.2d 1399, 1402 (9th Cir.), *cert. denied*, 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 394 (1986); *United States v. Mueller*, 778 F.2d 539, 540 (9th Cir.1985); *United States v. Kraeger*, 711 F.2d 6, 7–8 (2d Cir.1983).

Moreover, the claim here is that the excluded documents bear on the sincerity of Willie's subjective beliefs because they demonstrate the objective reasonability of those beliefs. Thus, under this rationale, the admission of such documents would have been of equal, if not greater, importance in cases decided under an objective standard, where the reasonableness of the defendant's belief directly answered the question of willfulness, than in cases decided under the subjective standard employed today.

as more obviously interpretive and argumentative writings from seminars, books and cases.[11] When viewed in a vacuum, the Constitution and other historical documents merely set forth broad principles of governance—the law in its raw form. However, "[m]any words [in the Constitution] acquire meaning through judicial and administrative construction over the years...." *Coleman v. Commissioner of Internal Revenue,* 791 F.2d at 71.[12] Presentation of the historical language of these documents in the context of a trial and as support for the defendant's beliefs fails adequately to account for this evolution and tends instead to argue, as law, the defendant's own interpretation of the historical documents. Willie's letters to government officials more expressly set forth and argued his version of the law as formed from reading these documents and may be equally confusing to the jury. *See Johnson v. Colt Ind. Operating Corp.* 797 F.2d at 1534 (a finding that evidence is relevant "does not validate the form in which that evidence was admitted").

Furthermore, the admission of legal evidence by one party opens the door to refuting evidence by the other. Thus, upon admission of the documents to show the reasonableness of Willie's belief, the government would then seek to introduce contradictory case law and historical documents to prove the unreasonableness and insincerity of the defendant's belief.[13] *See Specht v. Jensen,* 853 F.2d at 809. "The potential is great that jurors will be confused by these differing opinions, and that confusion may be compounded by different instructions given by the court." *Id.*

We acknowledge that this is a difficult issue because of the line-drawing it requires. However, it does not become less so under the theory of the dissent. While the dissent argues that this evidence should be admitted, it does not provide any meaningful direction in drawing the line further down the slippery slope. Thus, if a defendant, under the accumulated weight of material presented at a two-week seminar, comes to believe that he has no duty to file, where would the dissent have us draw a line as to that seminar material? Would we admit only the first three days of material? Twenty-five percent of all written material? All of the argumentative interpretations of speakers? The dissent states, "To the extent that [the documents] could be interpreted (albeit erroneously) as support for [the defendant's] views, it seems to me that they tend to corroborate the sincerity of his beliefs," Dissenting Opinion, at 1401, indicating that *any* evidence that goes to show the basis of the defendant's beliefs, however "dubious," should be admitted, *id.* at 1402. Under that theory, would not the entire two-week seminar be admissible? Yet, it is difficult to believe that even the dissent would countenance placing an entire tax "education" seminar before the jury. The dissent attempts to draw a distinction between "argumentative legal tracts" and "documents with official, historic, or precedential status." [14] *Id.* at 1388 n. 2. However, the line between the two is not as clear as it first appears since,

---

**11.** The dissent makes much of the fact that many of the exhibits submitted were historical or official legal documents. However, that fact does not render them immune to exclusion for relevancy. *See United States v. Harrold,* 796 F.2d at 1285 (citing with approval, *Cooley v. United States,* 501 F.2d at 1253–54 (court did not abuse its discretion in excluding Congressional Record, IRS Training Manual and Supreme Court opinions)); *United States v. Bergman,* 813 F.2d 1027, 1029–30 (9th Cir.) (excluded Constitution, Declaration of Independence, Internal Revenue Code and cases against IRS), *cert. denied,* 484 U.S. 852, 108 S.Ct. 154, 98 L.Ed.2d 110 (1987); *United States v. Malquist,* 791 F.2d 1399, 1402 (9th Cir.) (excluded Constitution, Declaration of Independence and federal cases), *cert.*

*denied,* 479 U.S. 954, 107 S.Ct. 445, 93 L.Ed.2d 394 (1986).

**12.** Thus, for instance, in a prosecution for crying fire in a crowded theatre, the defendant's attempt to introduce the First Amendment into evidence would be improper.

**13.** The dissent's evenhandedness argument, we assume, applies both ways.

**14.** To support its proposition, the dissent cites to *United States v. Fingado,* 934 F.2d 1163 (10th Cir.1991). However, *Fingado* does not seem to clarify the line proposed by the dissent since, in that case, the district court admitted a packet of seminar material but excluded testimony regarding a civil case.

as discussed above, historical or official documents submitted to the jury in the trial context are as argumentative and confusing as legal briefs. Furthermore, under the dissent's argument, the seminar materials would be as relevant and probative of the defendant's state of mind as the Constitution. To exclude certain types of documents as irrelevant to sincerity of belief but admit others for the same purpose seems, at best, inconsistent and, at worst, unfair. Since line-drawing has to be done, although difficult, the trial judge should be allowed to draw the line designated here. We see no principled distinction between the evidence offered in this case and other evidence that may be submitted to show the defendant's basis for his belief.

In the end, the admission of exhibits is, and should be, a discretionary judgment call by the trial judge as the rules of evidence provide. Thus, even if some of the documents here were relevant, we would affirm the district court's exclusion because the documents were unduly confusing. See Fed.R.Evid. 403.

 Finally, as a further alternative holding, even were we to find that Willie's

offer of proof was sufficient and that the judge abused his discretion in excluding the evidence, the error, if any, was harmless. Willie had ample opportunity to submit the substance of his good faith theory to the jury and to prove he was unaware of his legal duty to file. He was free to testify about his communications with the IRS and other government agencies,[15] his subjective beliefs in regard to his understanding of the law, the extent of his research into the tax laws and the effect of his investigation on his beliefs. He was not cut off, in either his direct testimony or his closing argument,[16] from pursuing or arguing his true perceptions as to his personal obligations under the tax laws. See United States v. Harrold, 796 F.2d at 1284 (defendant testified in detail about his beliefs and awareness of his obligations, how he studied for years and that he looked at Supreme Court decisions, not about the contents of the documents); Cooley v. United States, 501 F.2d at 1254 (defendant allowed to testify about conversations with IRS and about his understanding of the law). That Willie was unable to embellish upon his arguments or present his case to the extent and in the form he desired is not prejudicial

---

15. In arguing for the admissibility of the letters, the dissent points out that since the government sought to prove Willie's insincerity by showing his prior inconsistent treatment of filing, the defendant should, conversely, be allowed to establish his sincerity by showing his consistent written assertion of his misunderstanding to government agencies. Dissenting Opinion, at 1401-02.

We note first that it is far from clear that the government's evidence of prior filing was offered to show Willie's insincerity of belief rather than to show his apparent awareness of his duty to file, despite his firmly held conviction that he should not. But even if offered to show sincerity, Willie had adequate opportunity to establish that he had acted consistently with his professed belief in cross-examining the government witnesses about his conversations with them and testifying himself regarding his conversations and correspondence with the IRS. The trial court was not required to admit the letters themselves, particularly when the essence of the correspondence could have been presented to the jury through testimonial evidence. See United States v. Hairston, 819 F.2d at 973. That Willie may not have effectively utilized the other methods of proof available to him does not render the trial court's decision erroneous.

16. Willie's direct testimony and exchange with the judge is quoted above. His closing argument is as follows:

MR. WILLIE: ...
So I started researching, and all that research has been denied into evidence, so now all I have is just the small testimony that I gave you, so I have nothing in the records to present to you, but just based on that testimony I gave you, saying that I am an Indian not taxed, as what is a right.

It's not just something I dreamed up or anything. I went through it, I went behind what the intent of those documents were, and what it showed me was that the people that came from overseas, they intended to abide by a principle that they established, that my property was not to be taken without my consent, period.

That's what it says. So that's why in those statutes that you'll see the words, Indians not taxed. Now, that's where I fit, my status, and that's all I have to show you.

And based on that, I think I do have a right to an acquittal, so they did not prove beyond a reasonable doubt that I am one required to file.

R.Vol. III at 296-97.

where, as here, he was not prevented from presenting the substance of his defense to the jury.

## IV.

### PEREMPTORY CHALLENGE DISQUALIFYING NATIVE AMERICAN JUROR

Willie argues that the prosecutor improperly exercised one of its peremptory challenges to disqualify one of two Native Americans on the jury in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He claims that he established a prima facie case of racial discrimination and that the prosecution inadequately explained its reasons for disqualification. We disagree.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court prohibited the government from using its peremptory challenges to remove members of the venire based on race. To prevail under *Batson*, the defendant must establish a prima facie case of purposeful discrimination by showing: first, that he is a member of a cognizable racial group; second, that the prosecutor has exercised peremptory challenges to remove venire members of his race; and third, that "these facts and any other relevant circumstances raise an inference that the prosecutor used [his peremptory challenges] to exclude the veniremen from the petit jury on account of their race." [17] *Id.* at 96–97, 106 S.Ct. at 1723. Only after the defendant has established a prima facie case does the burden shift to the prosecution to make a "clear and reasonably specific" explanation for challenging the minority juror. *Id.*

Willie, as a Native American, is a member of a recognizable racial group, *United States v. Bedonie*, 913 F.2d 782, 795 (10th Cir.1990), and Grace White, the potential juror removed by the prosecution,

is also a Native American. However, Willie has pointed to nothing in the record, other than White's removal, from which to infer that the government's use of its peremptory challenge was racially motivated. The mere fact that the prosecution removed one of two Native American venirepersons does not establish a prima facie case of race discrimination. *United States v. Lewis*, 892 F.2d 735 (8th Cir.1989).

In making out a prima facie case, "the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal.... The defendant must identify facts and circumstances that support the inference of discrimination, such as a pattern of discriminatory strikes, the prosecutor's statements during voir dire suggesting discriminatory purpose, or the fact that white persons were chosen for the petit jury who seemed to have the same qualities as stricken black venirepersons."

*United States v. Allison*, 908 F.2d 1531, 1538 (11th Cir.) (quoting *United States v. Young–Bey*, 893 F.2d 178, 179 (8th Cir. 1990)), *reh'g denied*, 920 F.2d 13 (1990) (en banc); *see also United States v. Dawn*, 897 F.2d 1444, 1448 (8th Cir.) (defendant obligated to develop record, beyond mere numbers, in support of alleged violation), *reh'g denied*, 897 F.2d 1444 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990). Willie has presented no such facts. Indeed, the fact that the prosecution exercised only four of its six peremptory challenges undercuts an inference of discrimination since the government, if it had chosen, could have excluded Tom Nez from the jury as well. *United States v. Moore*, 895 F.2d 484, 486 n. 5 (8th Cir.1990); *United States v. Allison*, 908 F.2d at 1537. And the prosecution voluntarily stated that the reason it sought to remove White from the jury was on ac-

---

**17.** "[T]he defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discrimi-

nate.'" *United States v. Batson*, 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)).

count of her occupation, not her race.[18] Tr. at 20.

Since Willie has not established a prima facie case of a *Batson* violation, we need not address the adequacy of the government's explanation for its use of its peremptory challenge.

## V.

### NOTICE OF OFFENSE CHARGED

 Willie claims in his supplemental, *pro se* brief, that he was not sufficiently informed of the elements of his offense. We disagree. An information need only plead those facts and elements of the offense charged sufficient to inform the defendant of the charges against him to enable him to prepare a defense and to safeguard him from double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 *reh'g denied*, 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *United States v. Bedonie*, 913 F.2d 782, 790 (10th Cir.1990). Willie does not argue that he was surprised or unduly prejudiced by the alleged deficiency of the information. Apparently, he just disagrees with the government's definition of the terms "income" and "required." The definitions of these "legal term[s] of art" are sufficiently definite in legal meaning to give notice of the charge to the defendant. *See Hamling v. United States*, 418 U.S. at 118, 94 S.Ct. at 2908. Since the information complied with legal standards, Willie's mere disagreement with the meaning of its terms does not render it defective.

## VI.

### JURISDICTION OVER NATIVE AMERICANS

 Willie also seems to contend, *pro se*, that the federal courts do not have jurisdiction to prosecute Native Americans for failure to pay income taxes. Willie claims that federal income tax laws cannot apply to Native Americans, relying on a quote from the United States Constitution stating, "Indians not taxed." However, he misinterprets this phrase. It relates solely to state taxation and does not restrict the federal government's ability to levy income tax. *Dillon v. United States*, 792 F.2d 849, 852 n. 1 (9th Cir.1986) (citing *Squire v. Capoeman*, 351 U.S. 1, 76 S.Ct. 611, 100 L.Ed. 883 (1956)), *cert. denied*, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987). It has long been established that "Indians are citizens and that in ordinary affairs of life, not governed by treaties or remedial legislation, they are subject to the payment of income taxes as are other citizens." *Squire v. Capoeman*, 351 U.S. 1, 6, 76 S.Ct. 611, 615, 100 L.Ed. 883 (1956); *see Hoptowit v. Commissioner*, 709 F.2d 564, 565 (9th Cir.1983). "To be tax exempt, the income must have been derived 'directly' from the [tax-exempt] land." *Saunooke v. United States*, 806 F.2d 1053, 1056 (D.C.Cir.1986); *see Squire v. Capoeman*, 351 U.S. at 9, 76 S.Ct. at 616; *Hoptowit v. Commissioner*, 709 F.2d 564; *United States v. Anderson*, 625 F.2d 910 (9th Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1367, 67 L.Ed.2d 347 (1981). The income earned by Willie during the years in question was earned by way of employment in places far from the Indian Reservation and was not derived in any way from Indian trust lands. Nor has Willie claimed this exemption. Thus, his income is subject to taxation and he may be prosecuted by federal courts.

We have carefully reviewed the remaining claims brought *pro se* by Willie and reject them as frivolous and without support in the record.

Based on the foregoing reasons, we AFFIRM.

EBEL, Circuit Judge, dissenting:

Although in all other respects I join the majority opinion in this case, I must respectfully dissent from the majority's conclusions in Section III—EXCLUSION OF

---

**18.** While this explanation may not be sufficient to withstand scrutiny had Willie established a prima facie case requiring an explanation, it lends additional support to our conclusion that Willie has not established a prima facie case of discrimination. *See United States v. Dawn*, 897 F.2d at 1449 n. 5.

EXHIBITS. My disagreement with the majority is not so much with the general legal principles which are set forth there with admirable clarity as it is with the application of the law to these facts. However, because I believe the district court erred in excluding many of the exhibits tendered by the defendant, and because I further believe that the government has not established that such error was harmless, I would reverse the judgment below and remand for a new trial.

The excluded documents consist of copies of the Constitution, session laws, legislative history, and Indian treaties, as well as letters from defendant to the Treasury Department and the Department of Justice which apparently pre-dated the criminal prosecution and in which the defendant set forth his understanding of his tax obligations. The documents seem to be directed toward three themes: 1) paper money is not legal tender, 2) private wages are not taxable income, and 3) Indians (such as defendant) are not taxed. However, defendant tendered the exhibits only in support of his argument that Indians are not taxed. Exhibits A, B, E, G, H, J, and M are documents he apparently reviewed and relied upon in reaching his conclusion that as an Indian he is not subject to taxation.[1] To the extent that these particular documents could be interpreted (albeit erroneously) as support for his views, it seems to me that they tend to corroborate the sincerity of his beliefs. The defendant's three letters to the Treasury Department and Justice Department (Exhibits N, O, and Q) tend to corroborate the sincerity of his beliefs because he relied upon the argument that he could not be taxed as an Indian in his communications with the enforcement authorities before the criminal prosecution ever began.

In *Cheek v. United States,* — U.S. —, 111 S.Ct. 604, 112 L.Ed.2d 617 (1990), the United States Supreme Court held that a defendant cannot be convicted of willfully failing to file a tax return under 26 U.S.C. § 7203 except upon proof that (1) the defendant knew of his duty to file a return covering the income in question and (2) he voluntarily and intentionally violated that duty. *Id.* 111 S.Ct. at 611. The Court stressed the subjective nature of the test when it concluded:

> [I]f [defendant] asserted that he truly believed that the Internal Revenue Code did not purport to treat wages as income, and the jury believed him, the government would not have carried its burden to prove willfulness, however unreasonable a court might deem such a belief.

*Id.*

Of course, subjective intent is rarely proved by direct evidence. Rather, it must almost always be established by indirect or circumstantial evidence. Thus, in attempting to discern the defendant's subjective intent, a fact-finder will often be required to look to the following: (1) the consistency of defendant's past conduct and positions taken, (*United States v. Harrold,* 796 F.2d 1275, 1284 (10th Cir.1986)); (2) the research and information upon which the defendant has predicated his opinion, (*United States v. Conforte,* 624 F.2d 869, 876 (9th Cir.), *cert. denied,* 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) ("reliance on advice of counsel in tax evasion cases is not a complete defense, but only a circumstance indicating good faith which the trier of fact is allowed to consider on the issue of willfulness")); and (3) the objective reasonableness of defendant's beliefs (*United States v. Collins,* 920 F.2d 619, 622 (10th Cir. 1990)) (*quoting United States v. Mann,* 884 F.2d 532, 537 n. 3 (10th Cir.1989) ("Although not itself the standard by which to evaluate good faith, the reasonableness of a good-faith defense is a factor which the jury may properly consider in determining whether a defendant's asserted beliefs are genuinely held.")).

---

1. Exhibit K appears to relate only to Cherokee Indians, and it was properly excluded on grounds of irrelevancy. Exhibit L is an unidentified document, and it was properly excluded for lack of identification and foundation. Exhibits C, F, and I appear not to relate to his argument that Indians are not taxed, and consequently they were also properly excluded as irrelevant.

In this case, the government asserted the lack of consistency on the defendant's part as proof of his lack of sincerity in believing the tax laws do not apply to him. Specifically, the government argued that defendant's previous filing of tax returns and numerous bogus exemptions tended to disprove defendant's claim that he believed the tax laws did not apply to him. The corollary, it seems to me, should be equally valid. To the extent that the defendant *has* previously asserted to the taxing authorities that the tax laws do not apply to him and has advanced the same arguments he is now relying upon, that prior public profession of his belief is evidence of the sincerity of that point of view. Thus, his three letters to the Justice Department and Treasury Department seem to me to be relevant evidence.

Similarly, the government introduced evidence that it had previously advised Willie of his filing obligations as the government has construed the law. Once again, the corollary, it seems to me, is that if there is evidence in the Constitution, statutes, legislative history, or the like, of which this defendant was historically aware and upon which he claims to have relied in formulating his tax views, such material would also seem relevant to the sincerity of defendant's views. Although many of the exhibits tendered are of dubious support for defendant's views, I can see a nexus, and defendant should have been allowed the opportunity to establish that nexus with the jury.

Finally, as the Court noted in *Cheek,* the government was free to present to the jury evidence of "relevant provisions of the Code or regulations, of court decisions rejecting [a defendant's] interpretations of the tax law, of authoritative rulings of the Internal Revenue Service, or of any contents of the personal income tax return

forms and accompanying instructions" to establish the unreasonableness of the defendant's asserted beliefs as a basis for evaluating the defendant's subjective beliefs. *Cheek,* 111 S.Ct. at 611–12. It therefore seems clear that the defendant should be able to introduce evidence of statutory provisions, legislative history, and similar official documents to support the objective reasonableness of his beliefs as evidence that such beliefs are sincerely held. It hardly seems to comport with due process and square-corner turning to allow the government to introduce such legal documents when it aids in securing a conviction but to deny the defendant use of similar documents when they might be helpful to the defense. *See Collins,* 920 F.2d at 622; *Mann,* 884 F.2d at 537 n. 3.

The government advances several cases for the proposition that the trial court does not abuse its discretion in refusing to admit treatises, tracts, briefs and opinions of layment regarding matters of law. *United States v. Afflerbach,* 547 F.2d 522, 524 (10th Cir.1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *Cooley v. United States,* 501 F.2d 1249, 1253–54 (9th Cir.1974), *cert. denied,* 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975). *See also United States v. Hairston,* 819 F.2d 971, 973 (10th Cir.1987); *United States v. Harrold,* 796 F.2d 1275, 1284 (10th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987). Aside from the fact that that proposition is not applicable to most of the exhibits excluded,[2] in my opinion, none of those cases stand for that absolute proposition. In *Afflerbach* and *Cooley,* the prevailing law at the time did not require the government to prove that the defendant had a subjective intent to violate the law. Thus, it was much less important in those cases that the

---

**2.** Only exhibit L appears to be a legal tract, brief or treatise, and I would affirm the exclusion of that exhibit on grounds of lack of foundation. The other "legal" documents are statutes, constitutional provisions, treaties, legislative history and similar legal documents of historic or official significance. I would draw a distinction between argumentative legal tracts and material advocating a particular legal point of view,

which may be little more than legal briefs that would not ordinarily be submitted to a jury, and documents with official, historic, or precedential status such as constitutional provisions, statutes, and legislative histories. Compare the exhibits that the district court received with those rejected in *United States v. Fingado,* 934 F.2d 1163 (10th Cir.1991).

jury consider legal documents upon which the defendant purported to base his subjective opinion of the law. In *Hairston,* the court approved the exclusion of the tendered documents because extensive oral testimony about those documents was sufficient. In *Harrold,* the Tenth Circuit actually found that it was error to exclude letters the defendant had previously written to the taxing authorities, but it affirmed the conviction on the ground of harmless error.

Here I do not think the government has carried its burden of establishing that any error in excluding these documents should be regarded as harmless error. Contrary to the situation in *Hairston,* this is not a case where the defendant was able to get in through his own testimony the substance of all the excluded documents. The defendant took the stand and began to testify about his evolving belief that he is not subject to tax because he is an Indian. He indicated that he had begun by researching early Congressional and Constitutional records, and at that point he began to turn to his various tendered exhibits to show what it was that he reviewed and to establish how that research reaffirmed his beliefs.[3] When he attempted to introduce Exhibit A as the first of those documents, the court rejected that Exhibit on the ground of relevancy. The defendant then apparently attempted to resort to narrative

testimony to explain the content of his research, but the court cut him off from that effort as well. The court stated:

Mr. Willie, I am not going to permit you to persist in this type of narrative. As I said, I am the judge of the law, and what apparently you're trying to suggest, or trying to tell the jury, is that you found some law that is going to be different than what I later will announce to them.

So you go on and testify about any matter you wish, but you're not going to be able to testify that you found some sort of document to support your position.

The fair reading of the court's ruling is that the court was not going to allow the defendant to engage in any discussions pertaining to the Constitution or the actual laws or legislative history upon which he relied. *See* R.Vol. III at 268, 270–271. This is confirmed by the court's ruling, immediately thereafter, that none of the exhibits could be introduced because they were irrelevant. Thus, this case should be contrasted with *Harrold* and *Mann,* where the defendant was able to testify about the substance of the excluded exhibits.

The government has the burden of proving that error is harmless. *United States v. Rivera,* 900 F.2d 1462, 1469 n. 4 (10th Cir.1990) ("Except possibly for minor tech-

---

3. In his opening statement, defendant stated:

All these years I've been trying to find out [whether Indians are taxed]. I did not hide from the Internal Revenue Service. I wrote letters to them, I appeared at their offices.... And further, because I wasn't getting answers from them, I went to the Justice Department.

R.Vol. II at 40–41. Similarly, on direct examination defendant set about presenting "how I came to believe that I am not one required to file." R.Vol. III at 261. Referring to the exhibits cited above, defendant stated:

So, I have some documents here that during my research I came upon, that re-establish, reaffirm those convictions that I had on my being an Indian not taxed.

R.Vol. III, p. 273. In introducing his exhibits to the trial court, defendant stated: "I'm going to submit these. This is my understanding of myself as an Indian not taxed...." R.Vol. III at 271. In his closing argument, defendant again asserted his good-faith defense:

So I started researching, and all that research has been denied into evidence, so now all I have is just the small testimony that I gave you ... saying that I am an Indian not taxed.... It's not just something I dreamed up or anything. I went through it, I went behind what the intent of those documents were.... So that's why in those statutes you'll see the words, "Indians not taxed." Now, that's where I fit, my status, and that's all I have to show you.

R.Vol. III at 297. Defendant's proposed jury instruction, which was rejected by the court, also demonstrated defendant's assertion of the good-faith defense:

You are instructed that if you find from all the evidence the defendant acted in good faith and believed that he was not required to file returns ... because of his belief that he is an Indian not taxed pursuant to the Constitution of the United States ... [you must find defendant not guilty.]

R.Vol. III at 281.

nical errors for which there is no reasonable possibility that the verdict could have been affected, the government ordinarily has the burden of proving that a non-constitutional error was harmless."). *See also United States v. Jefferson,* 925 F.2d 1242, 1255 n. 15 (10th Cir.1991). Here, the nature of the defendant's subjective intent was hotly contested; indeed, it was about the only contested factual issue in the case. When the defendant sought to bolster the sincerity of his asserted subjective beliefs by showing that he had previously and publicly asserted those views to the taxing authorities and by showing the objective research and historic legal authorities upon which he had relied in formulating his subjective views, the court rejected that evidence.[4] Thus, the defendant was left with little more than his naked and conclusory statements that he had researched the law and that research had lead him to a belief that he was not subject to the tax laws of the United States because he was an Indian. Generalities are seldom a match for specifics, and thus I cannot conclude that it was harmless error to deny the jury access to the specific evidence tendered by the defendant to corroborate the sincerity of his views.

Although the defendant is, in fact, wrong in his view that Indians are exempt from all federal income taxes, it is far from clear on this record that he did not hold his beliefs sincerely. On this record, I cannot conclude that the jury would not have come out differently if it had been able to consider these exhibits to corroborate the sincerity of the defendant's proffered views.

For these reasons, I respectfully dissent.

**4.** To the extent that the district court worried that the documents might confuse the jury about the law, that problem seems overstated and, in any event, easily cured. The government made it abundantly clear that it interprets those legal authorities differently from the defendant and that it would therefore be up to the court to instruct the jury as to how the law should, in fact, be interpreted. In any event, it would have been relatively simple for the judge to instruct the jury that these exhibits could be considered only on the issue of sincerity and genuineness of defendant's subjective beliefs and not as accurate statements of the law.