Jeffrey L. SCOTT, Petitioner–Appellant,

v.

Raymond ROBERTS, and Attorney General of Kansas, Respondents–Appellees.

No. 91–3356.

United States Court of Appeals, Tenth Circuit.

Sept. 22, 1992.

Benjamin C. Wood, Overland Park, Kan., for petitioner-appellant.

Jalynn Copp, Asst. Atty. Gen., Office of Atty. Gen. for State of Kan., Topeka, Kan., for respondents-appellees.

Before LOGAN, TACHA, and EBEL, Circuit Judges.

EBEL, Circuit Judge.

In this appeal of a denial of habeas corpus relief, we confront the issue of whether the refusal to grant a continuance at trial, which was requested in order to attempt to compel the testimony of a defense witness, amounted to a violation of the appellant's constitutional rights. We hold that, under the facts of this case, such a denial did not deprive the appellant of his constitutional rights under the Sixth and Fourteenth Amendments. Therefore, we affirm the district court's order denying the writ.

## I.  Facts

The appellant was convicted in state court of taking indecent liberties with a child in violation of Kan.Stat.Ann. § 21–3503 (1982). The original charge alleged sexual intercourse as the basis for the indictment, and it is unclear in the record before us whether a proper amendment was made to include lewd fondling or touching. After exhausting his state remedies, the appellant sought and was denied habeas corpus relief in the United States District Court for the District of Kansas. Appeal to this court followed. Jurisdiction is properly based upon 28 U.S.C. § 2253.

The alleged incident involved S.T., a twelve-year-old girl who was living with her mother, Donna Hahn, and her mother's boyfriend, Jeffrey Lynn Scott, the appellant. According to the testimony of S.T., she was sexually assaulted by the appellant one evening while lying on the couch in their apartment. S.T. alleged that she notified her mother the next day but that her mother chose to disregard her complaint.

A police officer who questioned the appellant orally testified that the appellant made several incriminating statements to her. However, there was no taped statement or signed confession, and the appellant flatly denied making these statements. The appellant testified that any confusion was due to the nature of the hypothetical questions posed to him. He further noted that his answers had indicated that he could not recall, could not remember, or did not engage in the activities mentioned.

At trial, in Kansas state court, the appellant intended to present the testimony of Donna Hahn, the alleged victim's mother, who was then residing in Minnesota. Proceeding under the Uniform Act to Secure Attendance of Witnesses from without State, Kan.Stat.Ann. § 22–4201 et seq., the defense "exercised full diligence" in attempting to secure Hahn's testimony. Memorandum and Order at 4, in Appellant's Appendix at Tab 7. On the day of trial, Hahn was not present to testify.

On the morning of trial but before the jury was empaneled, the appellant made his first request for a two-week continuance so that he could have Hahn served with a warrant issued out of Minnesota compelling her attendance. He renewed his request for a continuance in the afternoon of the first day and again during the presentation of the defense case. The appellant initially made the following proffer concerning Hahn's testimony:

This witness is material to this case and our defense. Basically if we don't have this witness we don't have a case. She is the mother of the alleged victim in this case. She was at the residence at the time that the state alleges that it occurred. She would be able to testify as to conversations she has and has not had with the victim in this case regarding

this matter. She would be able to testify we feel that she received a letter from the victim in this particular case stating in a manner of words that the next door neighbor, a Christine Schorn, had put her up to making this police report in Minnesota regarding the defendant in this case. Transcript at 5–6. During the defendant's case, the appellant made an additional proffer:

If Donna Hahn had been present, we expect that her testimony would be that she is the mother of [the victim]; that she was living with [the victim] during the months through September of 1984 to March of 1984 [sic]; that she lived continuously with [the victim] through that time. That during that time that she moved in—or that Jeffrey Scott moved in and resided with them; that at no time during that time period did [the victim] ever mention to her that there were any sexual improprieties. We expect that her testimony would be that in her experience with [the victim], that there have been instances where she had been manipulative, that she has lied in regard to activities of other people in order to manipulate people; that she cannot be trusted in this respect. We expect that her testimony would be that prior to [the victim] contacting the police in Willmar, Minnesota on June first, 1985, that she had no indication whatsoever that there was ever any sexual improprieties going on between Jeffrey Scott and [the victim].

Transcript at 5–6.

The district court was inclined to agree that Hahn's testimony was material and vital to the defense. Although the court issued a certificate authorizing a warrant for Hahn's arrest, it denied the appellant's request for a continuance. It is not clear whether the whereabouts of Hahn were known, but counsel for the defendant had earlier sent her money for travel to Kansas to attend trial and Hahn apparently spent the money for other purposes. Defense counsel had also attempted to serve Hahn with a warrant to compel her attendance but was unable to get such a warrant issued out of Minnesota in time because the local Minnesota judges were away at a conference.

## II. Legal Analysis

This appeal raises the following issue: whether the denial of the continuance at trial, which contributed to the inability of the defense to obtain the testimony of a vital and material witness, amounts to a denial of the appellant's constitutional rights under the Sixth and Fourteenth Amendments. Generally, the power to grant or deny a continuance is within the discretion of the trial judge and the decision will only be reviewed for abuse of that discretion. *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). A district court decision will only be reversed for an abuse of discretion, where the denial is found to be arbitrary or unreasonable and to have materially prejudiced the appellant. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir.1987).

In order to obtain habeas corpus relief, however, the petitioner must also show that the abuse of discretion infringed on his constitutional rights. The denial of a continuance must not only have been an abuse of discretion; it must have been so arbitrary and fundamentally unfair that it violated the appellant's constitutional right to due process. *Case v. Mondragon*, 887 F.2d 1388, 1396 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990); *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir.1981). That is, the error must have been so grave that it rendered the trial fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir.1985), *cert. denied*, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed.2d 993 (1986).

To grant habeas corpus relief, we must first conclude that the denial of the continuance was arbitrary and unreasonable and second that this violation rendered the trial fundamentally unfair. These legal conclusions involve mixed questions of law and fact and are reviewed de novo. *See Case*, 887 F.2d at 1393 (citing *Sumner v. Mata*, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982); *Chaney v.*

*Brown,* 730 F.2d 1334, 1346 (10th Cir. 1984)); *Dickerson v. Alabama,* 667 F.2d 1364, 1368–69 (11th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982).

### A. Was Denial of the Continuance Arbitrary and Unreasonable?

■ Although there are no mechanical tests to determine when the denial of a continuance is arbitrary or unreasonable, this court has set forth a number of factors to be considered. They include:

> ■ the diligence of the party requesting the continuance; [2] the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; [3] the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; [4] the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance.

*West,* 828 F.2d at 1470 (emphasis added). The evaluation must focus on the need for a continuance and the prejudice resulting from its denial. *Case,* 887 F.2d at 1397. We now turn to each of these factors.

### 1. Diligence

As the state concedes, the diligence of the appellant in attempting to secure Hahn's testimony is not in question. Appellees' Brief at 11. We have found no basis in the trial record to dispute this conclusion.

### 2. Usefulness of the Continuance

The district court expressed substantial doubt that a continuance of even two weeks would be sufficient to compel Hahn's testimony. Furthermore, it was not clear that Hahn's testimony could be secured at all. We find ample support for these concerns on the record. The record does not establish that Hahn's whereabouts were definitively known, and there were conflicting reports regarding her activities. Furthermore, the appellant's counsel informed the court that Hahn may have mis-

appropriated the funds sent to her for the purpose of travelling.

These concerns must be balanced against the possibility that the court could have forced Hahn to testify through compulsory process. On balance, the efficacy of the continuance in securing Hahn's appearance is in doubt and this factor favors neither the appellant nor the state.

### 3. Inconvenience

We agree with the trial court's conclusion that a continuance would have inconvenienced both the court and the prosecution. The first request for a continuance was made on the morning of the day of trial. Although the jury had not yet been empaneled, the venire panel had no doubt been called. Further, several witnesses for the prosecution had flown in from out of town. Assuming that Hahn could be found, it was unclear how long a continuance would be necessary to compel her testimony. Overall, a continuance at this late date on the morning of trial would have inconvenienced both the court and the prosecution. The renewed motions for a continuance made during trial would have resulted in even greater inconveniences because by then the jury had been empaneled.

### 4. Need and Prejudice

In determining whether the denial of a continuance is arbitrary or unreasonable, the most important considerations are the need for the continuance and the prejudice resulting from its denial. *Case,* 887 F.2d at 1397. In the instant case, these factors do not rise to a level that renders the denial arbitrary or unreasonable.

Hahn, the mother of the victim, was neither going to testify directly about the incidents underlying the charge, nor was she an alibi witness. Rather, as the proffers show, she was a potential impeachment witness. Admittedly, Hahn was to impeach the testimony of the victim, which was the crucial component of the prosecution's case. However, the impeachment testimony that Hahn was expected to offer was only on collateral matters that would

not directly have addressed whether the alleged events occurred. Furthermore, much of the evidence that Hahn's testimony was to elucidate had already been entered into the record. This can be seen most clearly from an examination of the proffer.

First, the proffer asserts that Hahn would have testified that she was home at the time of the alleged incident. This fact was undisputed and was not significant because the alleged crime occurred at a time when Hahn was asleep in a different room.

Second, Hahn was expected to testify that the victim reported the incident to the police because of a neighbor's instigation. This fact was uncontested, and Hahn's testimony to that effect would have been cumulative.

Third, Hahn was expected to deny that the victim ever told her about the appellant's actions. This testimony would have directly contradicted the victim's claim that she told her mother about the incident the morning after it occurred. Although this denial would have directly impeached the victim's testimony, the victim's testimony contained a number of other inconsistencies. There is no reason to believe that one more potential inconsistency on a collateral matter would have an effect on the jurors' ultimate decision to believe the essence of the victim's testimony even if the details were a bit unclear.

For example, at different points in her testimony, the victim testified that the incident in question took place at two different locations. She was also unclear as to the month in which it occurred. Furthermore, she gives different answers when questioned whether the television was on during the incident. Because of the inconsistencies already in the victim's testimony, we find that an additional inconsistency about whether she told her mother about the incident the next morning is not of such moment as to establish a compelling need for such testimony.

Fourth, the proffer asserted that Hahn would testify that the victim was basically untrustworthy. This testimony, although undoubtedly of some help to the defendant, is somewhat cumulative of other evidence in the record.

In sum, we cannot find that Hahn's testimony would have created a reasonable doubt in the mind of the jurors that did not already exist. Consequently, there was not a strong need for the continuance, and its denial did not materially prejudice the appellant. Considering all of the *West* factors, then, we cannot conclude that the denial of the continuance was either arbitrary or unreasonable.

**B. Did Denial of a Continuance Lead to a Fundamentally Unfair Trial?**

Even if it were found that the denial of the continuance was arbitrary or unreasonable, in order to obtain habeas corpus relief, the error alleged must rise to the level of a constitutional violation. In effect, it must render the trial fundamentally unfair. Under the fourth factor of the *West* analysis, we concluded that the denial of the continuance did not substantially prejudice the appellant. *A fortiori*, the trial was not rendered fundamentally unfair.

Nevertheless, we look to the entire trial to determine if there is a reasonable probability that with Hahn's proffered testimony the verdict would have been different. *Kirkpatrick*, 777 F.2d at 278–79, 280 (citing *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941), *United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see also Case*, 887 F.2d at 1397.

The jury, in making its determination, was presented with three different accounts of the events. First, the testimony of the victim that the appellant took indecent liberties with her. Second, the testimony of the officer that the appellant confessed to the crime. Third, the appellant's own testimony that he did not commit the crime, that he did not confess, but that he was unable to recall or remember the events and on occasion engaged in horseplay with the victim that involved inappropriate touching of private areas.

**1478**

Given this array of witnesses and the substance of their testimony, we conclude that the addition of largely cumulative, impeachment testimony on collateral matters would not have been reasonably likely to change the verdict. Accordingly, the denial of the continuance did not render the trial fundamentally unfair.

### III. Conclusion

The trial court's denial of a continuance, under the circumstances of this case, was neither arbitrary nor unreasonable under the standards set out in *United States v. West*. Furthermore the denial did not deny the appellant his right to a fundamentally fair trial. The judgment of the district court is AFFIRMED.