Lonnie K. MANLOVE, Petitioner–
Appellee/Cross–Appellant,

v.

Robert J. TANSY, Warden for the New Mexico State Penitentiary, Respondent–
Appellant/Cross–Appellee.

Nos. 91–2156, 91–2157.

United States Court of Appeals,
Tenth Circuit.

Dec. 16, 1992.

Peter Schoenburg, Chief Asst. Federal Public Defender, Albuquerque, NM, for petitioner-appellee/cross-appellant.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, NM, for respondent-appellant/cross-appellee.

Before LOGAN, EBEL, and KELLY, Circuit Judges.

EBEL, Circuit Judge.

Respondent Robert Tansy, Warden for the New Mexico State Penitentiary, appeals from an order granting petitioner Lonnie Manlove's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Manlove cross appeals, challenging the rejection of one of the grounds for his petition. The dispositive issue is whether the district court erred in concluding that the denial of Manlove's request for a continuance of the trial to obtain a witness violated his due process rights. We hold that the district court did not err. In light of this disposition, we do not reach the other two issues raised on appeal. Accordingly, we affirm the district court's order.

Manlove was charged with kidnapping, criminal sexual penetration, and aggravated assault. The prosecutrix testified that on the evening of February 4, 1979, she went for a walk at about 8:30 p.m. A car pulled up and a man jumped out, pointed a gun in her face, and told her to get in the car. He drove out of town and stopped, then forced her to perform oral sex at gunpoint. However, his attempt at sexual intercourse was unsuccessful. She was able to see his face when the car light came on. She testified that she had seen gloves and shirts in the car, and that she lost a pink comb in the car. She further testified that the inside door handle on her side of the car was missing. After the man dropped her off, she watched the car and tried to memorize its license plate number. She called the police, and gave them a description of her assailant, the car, and the license plate number. She identified

Manlove as her assailant at the police station and at trial.

The arresting officers testified that they stopped Manlove in his car at approximately 11:55 p.m. that night. They seized a small handgun from under the driver's seat, and observed black gloves and clothes in the car similar to those described by the prosecutrix. A later search revealed the comb that the prosecutrix claimed she left in the car. Upon inventorying the car, a police officer discovered that the inside door handle on the passenger side was missing. No medical evidence was offered as the prosecutrix had not had a physical examination after the assault.

Trial commenced on Friday, July 6. At 3:30 p.m. on July 6, 1979, Manlove's attorney, Tom Cherryhomes, requested a continuance of the trial until the following Monday, July 9, because he had just learned that a witness who had promised to testify had instead left town. The witness, Elizabeth Pike, was the prosecutrix's roommate on the night of the assault. Pike would have testified that the prosecutrix had concocted stories in the past about being kidnapped, being picked up hitchhiking, and sometimes being molested; that the prosecutrix's statement to the police contained some of the exact language she had previously used to describe sexual fantasies; that the prosecutrix had recanted an abduction story once; and that the prosecutrix was the type of person who would willingly see an innocent man put in jail.

The district court denied the continuance for four reasons: 1) Cherryhomes failed to subpoena Pike within ten days after notice of the trial date, as required by local rule;[1] 2) Cherryhomes should have telephoned the district attorney's office when he knew he intended to call Pike as a witness, rather than mailing notice; 3) the state had not had an opportunity to examine Pike before

trial; and 4) the judge would be out of town the following Monday.

Manlove then presented an alibi defense through friends and family. He did not testify. The jury returned its verdict at 2:38 p.m. on Saturday, July 7, finding Manlove guilty as charged. Pike was served with a subpoena on Monday, July 9.

Manlove moved for a new trial. He submitted Pike's affidavit in which she stated that she had intentionally evaded service of process because she was fearful the prosecutrix would harm her or her animals if she testified. The motion was denied. Manlove filed an appeal as of right, raising as an issue whether denial of the continuance violated his right to due process. The New Mexico Court of Appeals concluded denial of the continuance was not an abuse of discretion because Cherryhomes was not diligent in having a subpoena issued for Pike at such a late date, and affirmed the conviction. Manlove did not seek review in the New Mexico Supreme Court.

Manlove unsuccessfully raised the continuance issue in post-conviction motions and a state habeas petition. The state court concluded in the habeas proceeding that the trial judge denied the continuance because he had plans to go fishing, but that Pike's testimony would have been inadmissible under New Mexico's Rape Shield Law, N.M.Stat.Ann. § 30–9–16.[2] It therefore denied the petition.

Manlove filed a habeas corpus petition with the New Mexico Supreme Court, raising denial of the continuance as an issue. While that court questioned the propriety of denying the continuance under the local rule, it concluded that principles of finality precluded further review of the issue. *Manlove v. Sullivan*, 108 N.M. 471, 775 P.2d 237, 243 (1989). Respondent concedes that Manlove exhausted his state remedies

---

**1.** Fifth Judicial Dist.Ct.R. 19 provides:
It is further ordered that no trial shall be continued nor setting vacated on the grounds of absence or inconvenience of witnesses unless said witness or witnesses were subpoenaed or notified in writing of the trial setting within ten days after the notice to the party calling said witness.

**2.** This section provides generally that in a prosecution for a sexual offense, evidence of the victim's past sexual behavior, opinion evidence thereof, or evidence of reputation is inadmissible unless the court finds the evidence is material to the case and its probative value outweighs its prejudicial impact.

as to all issues raised in the present proceeding.

Manlove then filed this federal habeas petition. A magistrate judge issued proposed findings and a recommended disposition in which he concluded, *inter alia*, that denial of a continuance violated Manlove's due process rights. The district court adopted the magistrate judge's proposed findings and disposition and granted the petition, ordering Manlove released unless a new trial was held within ninety days.[3]

 Respondent contends that the district court used an incorrect standard to determine that denial of a continuance violated Manlove's due process rights.[4] He argues that the district court analyzed the issue under the factors for cases that come before the court on direct appeal rather than on habeas review.

 Whether the right to due process was violated is a mixed question of law and fact. *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). The state court's findings are presumed correct, unless one of the factors listed in 28 U.S.C. § 2254(d) is present or the findings are not fairly supported by the record. *Id.* at 1392 (footnote omitted). Legal conclusions and mixed questions of law and fact are reviewed de novo, although findings of fact underlying mixed questions are accorded the presumption of correctness. *Id.* at 1393.

*Case*, 887 F.2d at 1396, held that on direct appeal, a court reviews the denial of a continuance for abuse of discretion, and will not reverse unless the denial was arbi-

trary or unreasonable and materially prejudiced the appellant. The four factors that may be considered in determining whether a denial is arbitrary and unreasonable are:

> the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; a need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance. No single factor is determinative and the weight given to any one may vary, depending on the extent of the appellant's showing on the others.

*Id.* (quoting *United States v. West*, 828 F.2d 1468, 1470 (10th Cir.1987)).

 However, "when a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion, but 'it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process.'" *Id.* (quoting *Hicks v. Wainwright*, 633 F.2d 1146, 1148 (5th Cir.1981)). "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.'" *Id.* at 1397 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)). Nevertheless, the focus must be on the need for the continuance and the prejudice resulting from its denial. *Id.*

---

3. Manlove was ordered released on June 20, 1991.

4. While we are somewhat troubled by whether Cherryhomes' failure to comply with the local rule was an adequate and independent state ground for resolving the continuance issue, we do not read respondent's brief as having made this argument on appeal. A court can raise the state procedural bar defense sua sponte, but is not required to do so. *Hardiman v. Reynolds*, 971 F.2d 500, 504 (10th Cir.1992). We choose not to raise the issue sua sponte because of the late stage of the proceedings. In any event, the New Mexico Supreme Court questioned the propriety of denying the continuance under the

local rule, relying on its decision in *McCarty v. State*, 107 N.M. 651, 763 P.2d 360, 363 (1988), that, under certain circumstances, preclusion of important defense testimony is not justified as a sanction for violating a procedural rule requiring timely notice. *Manlove*, 775 P.2d at 243, 244. Thus, it does not appear that the local rule is an "adequate" state ground. *See Andrews v. Deland*, 943 F.2d 1162, 1190 (10th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1213, 117 L.Ed.2d 451 (1992) (state procedural bar rule is "adequate" if state court's actual application of rule to all similar claims has been evenhanded in vast majority of cases).

The district court found that Cherryhomes had not been diligent; that a continuance would have accomplished Manlove's goal of placing the prosecutrix's credibility in question; that a continuance would not have been a great inconvenience to the court, the state, or its witnesses; and that Manlove showed a need for Pike's testimony and prejudice from denial of the continuance. It placed particular emphasis on the need and prejudice factor. We conclude that it applied the correct standard.

As to the district court's analysis of the *West* factors, the parties dispute whether Cherryhomes was diligent. The relevant, undisputed facts are as follows: Pike's name was mentioned during the preliminary examination held February 16, 1979, but the nature of her potential testimony was not revealed at that time. Cherryhomes did not represent Manlove at that time, but became involved in the case in March 1979. He made several requests to the public defender, whose office represented Manlove at the preliminary examination, to provide him with tapes of the hearing, and was assured the tapes were being transcribed and a copy would be provided to him as soon as that process was completed. The public defender's office never produced the promised transcript.

Cherryhomes finally obtained the tapes from the court and had them transcribed. The record is conflicting as to whether he had a transcript by May 25, or not until June 26, 1979. He stated at the May 25 pretrial conference that he had a copy of the transcript. However, his wife certified that she had completed preparation of the transcript on June 26, 1979, and he testified that this was the date on which the transcript was prepared. After he read the transcript, he immediately made efforts to locate Pike. At first, Pike was reluctant to cooperate, but she eventually agreed to be interviewed on July 3, 1979, three days before the trial was scheduled to commence. Only after Cherryhomes interviewed Pike did the critical nature of her testimony become clear. Before Pike left his office on July 3, Cherryhomes gave written notice to the state of his intent to call Pike. Pike agreed to appear at trial.

Nevertheless, Cherryhomes issued a subpoena for Pike on July 5. At 3:10 p.m. on the day of trial, Cherryhomes learned that Pike had left town.

The district court found that Cherryhomes could have obtained the preliminary examination tapes and had them transcribed earlier, so as to comply with the local rule. We agree. A reasonably diligent attorney would not have waited until so close to the trial to have the preliminary examination testimony transcribed and to contact a potential witness identified in the transcript. Although the importance of Pike's testimony is not apparent from reading the transcript, a reasonably diligent attorney would have interviewed the prosecutrix's roommate as a matter of course. However, Cherryhomes' lack of diligence is only one factor to consider, and it is not the most important factor.

As to the inconvenience factor, the parties dispute whether the trial judge, the Honorable Harvey Fort, stated as a reason for denying the continuance that he had planned a fishing trip for Monday, July 9, 1979. Cherryhomes testified to this effect in a state habeas proceeding. In response, Judge Fort submitted an affidavit in which he denied making the fishing trip comment, and stated that he disposed of nineteen cases in Roswell, New Mexico, on July 9. The district court assumed that Judge Fort had conducted court business on July 9, but found nothing in the record to indicate that rescheduling the court business would have produced an undue hardship on anyone. We agree. Further, Judge Fort should have anticipated the possibility that a trial of this nature that starts on a Friday could run over to Monday. Thus, even if Judge Fort did not go fishing Monday, but rather only conducted court business in Roswell, we would still uphold the district court's finding that the trial court would not have been greatly inconvenienced by granting a continuance. Any minor inconvenience was outweighed by Manlove's need for the continuance.

Respondent argues that Pike's testimony would have been largely inad-

missible at trial; thus, Manlove was not prejudiced by its exclusion. The state district court on habeas review concluded the testimony would be inadmissible under § 30-9-16, New Mexico's Rape Shield Law. However, the New Mexico Supreme Court concluded that Pike's testimony that the prosecutrix made up stories of rape and abduction in the past that resembled the facts alleged in this case, that she had once recanted such a story, and that she was the sort of person who would willingly see an innocent man put in jail, was not evidence of sexual conduct precluded by the Rape Shield Law but rather "went to the prosecutrix's proclivity for truthfulness and was relevant both to impeach her credibility and

as direct evidence in the petitioner's fabrication defense." *Manlove*, 775 P.2d at 241 n. 2. The court did not agree that the testimony was closely enough related to sexual conduct to be barred by this section, but noted that a trial court's discretion to exclude such evidence must be weighed against a defendant's constitutional right to confront witnesses. *Id.* The interpretation of state law by New Mexico's highest court is binding on us. *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 744, 38 L.Ed.2d 702 (1974).[5]

To find prejudice, "we look to the entire trial to determine if there is a reasonable probability that with [Pike's] proffered testimony the verdict would have been differ-

---

**5.** While not raised on appeal, we note that the New Mexico Supreme Court did not discuss whether Pike's testimony that the prosecutrix made up stories of rape and abduction would be inadmissible under N.M.R.Evid. 608(B). This section prohibits extrinsic evidence of specific instances of conduct for the purpose of attacking a witness's credibility. The New Mexico Court of Appeals held in *State v. Scott*, 113 N.M. 525, 828 P.2d 958, 963 (Ct.App.1991), that extrinsic evidence of a victim's prior false accusations of rape was inadmissible under § 11-608(B) to attack the victim's credibility.

While extrinsic evidence is inadmissible to attack the credibility of a witness, such evidence is admissible for other purposes such as showing bias, prejudice, or motive to testify falsely. *State v. Lovato*, 91 N.M. 712, 580 P.2d 138, 140–41 (App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). The *Manlove* court drew a distinction between using Pike's testimony to impeach the prosecutrix's credibility, and using it as direct evidence in Manlove's fabrication defense. 775 P.2d at 241 n. 2.

A state court found in petitioner's habeas proceeding that "Attorney Cherryhomes contemplated using Pike to establish a 'fabrication defense.' Pike was expected to relate to the Court that the prosecutrix had fabricated numerous incidents similar to the one with which the Petitioner was charged." R.Vol. IV Supp. at 47–48. State court findings are presumed correct unless one of the exceptions in 28 U.S.C. § 2254(d) exists. Respondent has not argued that one of these exceptions exists and, in fact, states in his brief that "Cherryhomes contemplated using Pike to establish a 'fabrication defense.'" Respondent's Br. at 7.

In any event, we conclude the finding is supported by the record. Although Cherryhomes stated at trial that he needed Pike's testimony to attack the prosecutrix's credibility, he also noted that he was being precluded from showing whether the prosecutrix was "a storyteller, a fantasizer; been involved in these instances be-

fore." R.Vol. II Supp. at 257. We therefore presume the finding is correct that Pike's testimony was also being offered for a fabrication defense and that it would have been admissible for that purpose.

The scope of the "fabrication defense" is unclear. As the term is used elsewhere, the defense appears to be little more than a claim the victim made up the story. *See State v. Fish*, 101 N.M. 329, 681 P.2d 1106, 1109 (1984); *State v. Montoya*, 91 N.M. 752, 580 P.2d 973, 974 (App.), *cert. denied*, 91 N.M. 751, 580 P.2d 972 (1978). However, as previously noted, the *Manlove* court distinguished between the fabrication defense and impeachment of the prosecutrix's credibility. At least one other court has drawn a distinction between using evidence of prior false accusations to impeach a witness's general credibility, and using it as direct evidence in support of a defense:

[E]vidence of prior false accusations of the same charge involved in the main case ... is not offered for the purpose of impeaching or discrediting the general character or reputation of the witness, but is offered to disprove the very charge before the court. It is relevant as to the state of mind of the prosecutrix. *People v. Hurlburt*, 166 Cal.App.2d 334, 333 P.2d 82, 87 (1958).

It is unclear whether the *Manlove* court considered § 11-608(B) and concluded that Pike's testimony would have been admissible because that testimony was something other than a general attack on credibility. In any event, we have to accept the conclusion of the New Mexico Supreme Court as to the admissibility of that evidence. Our conclusion, however, should not be construed as a holding that such evidence is generally admissible, but rather it is only an acknowledgement of the deference that we owe to the New Mexico Supreme Court and the New Mexico district court in the findings of fact and conclusions of state law that are contained in this state record.

ent." *Scott v. Roberts,* 975 F.2d 1473, 1477 (10th Cir.1992). The only evidence against Manlove was the prosecutrix's testimony, corroborated in part by the discovery of items in Manlove's car that she had described to the police. The corroborating evidence tends to prove that she was in Manlove's car, but not necessarily that she was sexually assaulted, by Manlove or anyone else. No medical evidence was offered to substantiate that sexual activity, consensual or otherwise, had occurred. There was no confession by the defendant here, but rather Manlove steadfastly maintained his complete innocence. However, the jury obviously disbelieved Manlove's alibi defense. Thus, Pike's testimony was potentially crucial to Manlove's defense. Those portions of Pike's testimony that the New Mexico Supreme Court ruled were admissible would have suggested that the alleged crime was fabricated. Therefore, a reasonable probability exists that the outcome of the trial would have been different if Manlove had been granted the continuance. We agree that Manlove needed Pike's testimony and denial of the continuance prejudiced him. These cases are highly fact specific, but here we agree that the district court did not err in concluding that the denial of a continuance violated Manlove's due process rights.[6]

The order of the United States District Court for the District of New Mexico is AFFIRMED. Manlove's request for oral argument is DENIED.

PAUL KELLY, Jr., Circuit Judge, dissenting.

This court affirms the granting of the writ after concluding that Ms. Pike's testimony would have assisted in Mr. Manlove's

fabrication defense. However, the record establishes unambiguously that Mr. Manlove neither developed a fabrication defense nor suggested to the trial court that a fabrication defense was contemplated. This court relies heavily upon a finding, made during state habeas proceedings, that Mr. Manlove presented a fabrication defense. Although in federal habeas proceedings we normally defer to state court findings of fact, we are not so bound if, after considering the record as a whole, "the factual determination is not fairly supported by the record." 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981); *Case v. Mondragon,* 887 F.2d 1388, 1392 (10th Cir.1989), *cert. denied,* 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990).

In the state trial court, Mr. Manlove's *only* stated ground for seeking admission of Pike's testimony was to impeach the credibility of the prosecutrix. Ms. Pike's testimony would have been extrinsic evidence used to attack the credibility of a witness and therefore inadmissible. *See* N.M.R.Evid. 608(B) (1986). This court so recognizes, which is why it must rely completely on the fabrication defense not offered at trial to find that "Pike's testimony was potentially crucial to Manlove's defense." *See* Ct.Op. at 478 n. 5 & 479. The state trial court correctly refused to grant the belated request for a continuance because the only ground on which it was requested was to impeach the prosecuting witness with collateral evidence. While the defense certainly could cross-examine the prosecutrix about any prior fantasizing and stories, to impeach her denial would require a resort to extrinsic evidence which is

---

**6.** Although there are obvious similarities between this case and *Scott,* 975 F.2d 1473, where we reached a contrary conclusion, there are sufficient differences to explain the apparently contrary results. In *Scott,* a police officer testified that the defendant confessed, although the defendant denied doing so. *Id.* at 1477. Further, he acknowledged that he had on occasion engaged in horseplay with the victim that involved inappropriate touching of private areas. *Id.* Manlove, in contrast, maintained his complete innocence. Additionally, the proffered testimony in *Scott* that the victim was basically not trustworthy was somewhat cumulative of other

evidence in the record. *Id.* Here, absent Pike's testimony, the trial record was devoid of evidence that the prosecutrix was not trustworthy. Finally, the proffered testimony in *Scott* that the victim was not trustworthy because "she has lied in regard to activities of other people in order to manipulate people," *id.* at 1475, probably would have had much less of an impact on a jury than Pike's proffered testimony that the prosecutrix had fabricated stories of abduction and rape similar to that involved in the present case. Finally, here we have a statement from the New Mexico Supreme Court that Pike's testimony would have been admissible.

plainly prohibited under the rule. *See Mason v. Texaco, Inc.,* 948 F.2d 1546, 1556 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992); *United States v. Bowie,* 892 F.2d 1494, 1500–01 (10th Cir.1990); *United States v. Mangiameli,* 668 F.2d 1172, 1175–76 (10th Cir.), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1982); *Baum v. Orosco,* 106 N.M. 265, 742 P.2d 1, 6–7 (App. 1987). *See also* IIIA James A. Chadbourn, *Wigmore on Evidence* § 979 at 823 (Rev. ed. 1970).

Despite the dicta by the New Mexico Supreme Court that Ms. Pike's testimony was admissible under N.M.R.Evid. 404(A)(2) and 608(A) (1986), *Manlove v. Sullivan,* 108 N.M. 471, 775 P.2d 237, 241 n. 2 (1989), the testimony does not directly concern the crimes charged, but rather was offered as impeachment evidence. Mr. Manlove's counsel did make an isolated and vague reference to the prosecutrix's background and reputation as a storyteller or fantasizer. *See* Ct.Op. at 478 n. 5. The isolated mention of the words "storyteller" and "fantasizer" is an insufficient basis to conclude that Mr. Manlove presented the trial court with a fabrication defense. These words were mentioned during a directed verdict motion, renewal of the continuance motion, and during a motion to take judicial notice of a newspaper. Nothing in defense counsel's presentation indicated that Ms. Pike's testimony related to fabrication by the prosecutrix. On the contrary, when counsel specifically enumerated the reasons why Ms. Pike's testimony should be admitted, only credibility was mentioned. II R.S. 215 ("It goes definitely to her credibility...."); 216 ("it goes to her credibility, the complaining witnesses credibility"); 255 ("renewing my request previously made, for a continuance to show the credibility of the sole witness against the defendant"). Indeed, the record indicates that defense counsel never even cross-examined the prosecutrix about her alleged prior fantasizing and storytelling.

Granting the writ in this case also is inconsistent with our most recent decision in this area. In *Scott v. Roberts,* 975 F.2d 1473 (10th Cir.1992), we held that a failure to grant a continuance was not constitutional error where the prosecutrix's mother would have testified concerning the aftermath of the particular sexual assault charged and impeached the testimony of her daughter.[1] The *Scott* trial court found that the "testimony was material and vital to the defense." *Id.* at 1475. The defense in *Scott* had been diligent in attempting to secure the testimony of the alleged victim's mother, unlike this case where the subpoena was obtained the day before trial, served after the trial and the motion for a continuance came during the first day of trial.

Federal courts, in my opinion, should not reformat a petitioner's case and override the often tactical strategy of defense counsel. *See Reed v. Ross,* 468 U.S. 1, 11, 13–14, 104 S.Ct. 2901, 2907, 2909, 82 L.Ed.2d 1 (1984). Twelve years after the fact, Mr. Manlove may have second thoughts about his trial strategy and wish that he had presented the court with a valid fabrication defense. However, Mr. Manlove's regrets about trial strategy do not merit constitutional relief without a showing that the denial of the continuance was arbitrary, unreasonable and so prejudicial as to render the trial fundamentally unfair. Because I do not believe that the record supports such a showing, I respectfully dissent.

---

1. Somewhat troubling is the court's emphasis on what it perceives as Mr. Manlove "steadfastly maintain[ing] his complete innocence" in deciding that he was prejudiced. *See* Ct.Op. at 479 n. 6. Mr. Manlove did not testify. Although the defendant in *Scott* allegedly confessed and admitted to contact with the prosecutrix on another occasion, the *Scott* defendant "flatly denied" that he confessed and maintained "that he did not commit the crime." *Id.* at 1474, 1477. A defendant can "steadfastly maintain his complete innocence," notwithstanding the presence of contrary evidence. Both Mr. Manlove and the defendant in *Scott* maintain they are innocent. The distinction made by the court is not persuasive.