51 F.3d 285
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Bernardo Benny BACA, Petitioner-Appellant,
v.
Thomas UDALL, Attorney General for the State of New Mexico,
Respondent-Appellee.
 No. 94-2167.
(D.C. No. CIV-91-1096-LH)
 United States Court of Appeals, Tenth Circuit.
 March 27, 1995.
 
 1
 Before KELLY and BARRETT, Circuit Judges, and OWEN*, District Judge
 
 ORDER AND JUDGMENT[1]
 
 2
 Bernardo Benny Baca (Baca) appeals from the order of the district court dismissing with prejudice his petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254. In order to reach the merits of Baca's claims, we grant his motion for a Certificate of Probable Cause and take jurisdiction pursuant to 28 U.S.C. 2253.
 
 
 3
 On February 2, 1988, Baca was charged by grand jury indictment in the District Court of Bernalillo County, New Mexico with aggravated burglary, conspiracy and battery. At his February 16, 1988, arraignment Baca sought permission to proceed pro se. In response to questioning by the court, Baca stated that he was competent to represent himself, that he had represented himself before, and that he had a tenth grade education and schooling as a paralegal. The court allowed Baca to proceed pro se.
 
 
 4
 At a hearing on February, 29, 1988, the prosecutor questioned Baca's ability to knowingly and intelligently waive his right to counsel. Discussion ensued as to Baca's psychiatric hospitalization and incompetency adjudications in 1974 and 1976.[2] During the hearing, Baca told the court that "in 1985, before the Honorable Judge Sitterly, a competency hearing was held and I was declared competent to stand trial and to represent myself and that was based on psychiatric testimony." (Tr. at 11). With Baca's consent, the court then ordered that Bradford Goodwin (Goodwin), an assistant public defender, be appointed as "co-counsel."
 
 
 5
 On July 13, 1988, Goodwin filed several motions to dismiss together with a motion to withdraw. On July 20, 1988, Baca re-affirmed that he thought he could understand the matter and represent himself adequately. Baca also informed the court that he had represented himself pro se three times before, that he was well-versed "to a pretty good extent" in the law, that he had participated in thirty to forty trials, and that he had worked for attorneys. The court then excused the public defender from the case.
 
 
 6
 On the following day, the prosecution filed a petition in the New Mexico Supreme Court for a two-month extension of time within which to bring the case to trial. Over Baca's objection, the supreme court granted an extension until October 21, 1988.
 
 
 7
 On August 1, 1988, Baca filed a pro se motion requesting appointment of standby counsel, citing his inability to post bond, his methadone treatment, heart problems, and the lack of adequate resources to represent himself while he remained in jail. On September 13, 1988, the court appointed Thomas Perkins (Perkins) as standby counsel. Perkins continued in this capacity until October 13, 1988, the day the jury began its deliberations, when the court excused him so he could attend a conference.
 
 
 8
 Prior to trial, Baca filed several motions to review conditions of release and a motion to dismiss for preindictment and postindictment delays. After a hearing on the morning of October 12, 1988, the court denied Baca's motion to dismiss. Baca then requested a continuance to obtain an expert evaluation of his competency to stand trial. In support of his request, Baca tendered his 1974 and 1976 incompetency adjudications. The court denied Baca's request and the matter proceeded to trial.
 
 
 9
 At trial, Baca presented no evidence or witnesses and did not testify on his own behalf. He tendered jury instructions on self-defense, which the court rejected for lack of evidence. The state dismissed the conspiracy charge and, after closing arguments by the prosecutor and Baca, the case was submitted to the jury. The jury found Baca guilty of aggravated burglary and battery. He was sentenced to a total of nine and one-half years of imprisonment to be followed by two years of parole after release.
 
 
 10
 On appeal to the New Mexico Court of Appeals Baca alleged 14 points of error including, inter alia: (1) his due process rights were violated when the trial court failed to hold a hearing on the issue of his competency to stand trial; (2) his Sixth Amendment right to counsel was violated when the trial court allowed him to waive his right to counsel and proceed pro se without first conducting a comprehensive examination of his mental competency and without first adequately informing him of the hazards of self-representation; and (3) he was denied his Sixth and Fourteenth Amendment rights to a speedy trial.
 
 
 11
 The New Mexico Court of Appeals affirmed his convictions. Baca raised these same issues in a petition for certiorari filed in the New Mexico Supreme Court, which was denied. Baca then filed a petition for writ of habeas corpus in federal district court, alleging the same issues he had raised on appeal in state court.
 
 
 12
 The district court dismissed, finding/concluding that: Baca's due process rights to a competency hearing were not violated; the facts before the trial judge were insufficient to create a doubt as to Baca's competency to stand trial; Baca's waiver of his right to counsel was knowing, intelligent, voluntary, and valid; and there was no violation of Baca's right to a speedy trial.
 
 
 13
 On appeal in this court, Baca again raises the same issues, i.e., that: (1) the trial court violated his due process rights; (2) the he was denied his Sixth Amendment right to counsel; and (3) the trial court denied him his Sixth and Fourteenth Amendment rights to a speedy trial.
 
 I.
 
 14
 Baca contends that his right to due process was violated when the trial court failed to hold a hearing on the issue of his competency to stand trial after he requested a continuance to obtain a competency evaluation knowing that he had been found incompetent to stand trial on two prior occasions and that he was representing himself.
 
 
 15
 When there is no state court hearing, our review of the sufficiency of the evidence before the trial court is de novo. Boag v. Raines, 769 F.2d 1341, 1343 (9th Cir.1985), cert. denied, 474 U.S. 1085 (1986). Competency to stand trial is a factual issue, Maggio v. Fulford, 462 U.S. 111, 117 (1983), and, as such, a state court's findings of underlying historical facts and factual conclusions drawn therefrom are entitled to the presumption of correctness unless not fairly supported by the record. Manlove v. Tansy, 981 F.2d 473, 476 (10th Cir.1992).
 
 
 16
 Baca argues that his psychiatric hospitalization and his two previous adjudications of incompetency to stand trial, alone, are sufficient to establish a bona fide doubt as to his competency to stand trial. In addition, Baca asserts that the fact that both he and the prosecutor questioned his current competency, together with his apparent confusion and expressed problems with the "serious adverse affects" of his medication or lack thereof, presented the court with evidence which "refreshed" the initial doubt arising from Baca's prior incompetent adjudications; the court knew it had no recent professional opinion of Baca's mental condition; and given proper consideration, the sum of this information raised a bona fide doubt as to Baca's competency.
 
 
 17
 There is no dispute as to the legal standard for determining competency to stand trial,[3] nor as to the evidence possibly relevant to Baca's competency to stand trial before the state court. "Rather, the dispute concerns the inferences that were to be drawn from the undisputed evidence and whether, in light of what was then known, the failure to make further inquiry into [Baca's] competence to stand trial, denied him a fair trial" in violation of his right to due process. Drope v. Missouri, 420 U.S. 162, 174-75 (1975).
 
 
 18
 Under New Mexico Rules of Criminal Procedure, the issue of competency to stand trial may be raised at any stage of the proceedings. SCRA 1986, Rule 5-602(B)(1). New Mexico provides for review of a defendant's competency to stand trial "upon motion and good cause shown." SCRA 1986, Rule 5-602(C). State procedures must be adequate to protect a defendant's right not to be tried or convicted while incompetent. Pate v. Robinson, 383 U.S. 375, 378 (1966). "Due process requires a trial court to conduct a competency hearing sua sponte whenever the 'evidence raise a bona fide doubt as to the defendant's competence to stand trial.' " Coleman v. Saffle, 912 F.2d 1217, 1224 (10th Cir.) (quoting Pate,[4] 375 U.S. at 385-87), cert. denied, 497 U.S. 1053 (1990).
 
 
 19
 The Supreme Court has determined that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors alone may, in some circumstances, be sufficient." Drope, 420 U.S. at 180. However, the Court has also acknowledged that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." Id.
 
 
 20
 In addressing competency to stand trial on habeas review, this court has held that "we must determine 'whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to [the defendant's] competency to stand trial.' " Coleman, 912 F.2d at 1226 (quoting United States v. Crews, 781 F.2d 826, 833 (10th Cir.1986) (citations omitted)). "[A] trial court need not conduct a competency hearing when there has been only minimal or no evidence of incompetence." Crews, 781 F.2d at 833. There must be some evidence to create a "bona fide doubt" on the issue; merely raising the issue is not enough. Coleman, 912 F.2d at 1226 (citation omitted).
 
 
 21
 We are persuaded, in light of the information available to the state trial court, that the court did not err in failing to hold a competency hearing. Baca failed to raise a bona fide doubt as to his competency to stand trial.
 
 
 22
 The facts before the trial court did not trigger the need for a competency hearing. The mere submission of the two prior adjudications of incompetency fourteen and twelve years before the subject criminal prosecution did not give rise to a bona fide doubt under the circumstances of this case. See Chavez v. United States, 656 F.2d 512, 518 (9th Cir.1981) ("an old psychiatric report indicating incompetence in the past may lose its probative value by the passage of time and subsequent facts and circumstances that all point to present competence"). In addition to the two prior incompetent adjudications, the trial court was aware of the recent 1985 adjudication of competency. Moreover, the trial court had ample opportunity to observe and converse with Baca; further, Baca asserted his own competence up to the day of trial. Finally, the record lacks any indication that Baca's behavior was "irrational." On the contrary, the record shows a defendant who had a rational and factual understanding of the proceedings.
 
 
 23
 In sum, after careful review of the record, we agree with the district court and hold that:
 
 
 24
 [u]nder these circumstances, a reasonable judge should not have experienced doubt with respect to Baca's competency. Therefore, a competency hearing was not required. Baca's due process rights were not violated when the trial court declined to hold a hearing on the issue of his competency.
 
 
 25
 (Record on Appeal, Vol. I, Doc. 64 at 5).
 
 II.
 
 26
 Baca alleges that he was denied his Sixth Amendment right to counsel because he did not knowingly and intelligently waive his right to counsel. The determination of whether a waiver of the right to counsel was knowing and intelligent is a mixed question of law and fact which we review de novo. Strozier v. Newsome, 926 F.2d 1100, 1104 (11th Cir.), cert. denied, 502 U.S. 930 (1991). The burden of proof is on the defendant to show that his waiver did not meet constitutional standards. Id.
 
 
 27
 Baca alleges that, although he "unequivocally insisted on proceeding pro se," he was denied his Sixth Amendment right to counsel when the trial court failed to conduct a penetrating and comprehensive examination of the circumstances underlying his mental incompetency and failed to inform him adequately of the hazards of self-representation. Baca asserts that the record "falls far short" of establishing that he understood what he was doing and that his choice was made with "open eyes."
 
 
 28
 A defendant has a constitutional right to waive his right to counsel and to represent himself at trial. Faretta v. California, 422 U.S. 806, 817 (1975); United States v. Allen, 895 F.2d 1577, 1578 (10th Cir.1990). However, to be valid, the trial court must ensure that the defendant's waiver of his right to counsel is done knowingly and intelligently, so that the record established that the defendant's choice was made with his eyes open. Faretta, 422 U.S. at 835; Allen, 895 F.2d at 1578. Ideally, the trial court should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se. United States v. Willie, 941 F.2d 1384, 1388 (10th Cir.1991) (citations omitted), cert. denied, 502 U.S. 1106 (1992).
 
 
 29
 The trial court in this case did not fully discuss these issues with Baca on the record. "However, such deficiencies do not prompt us to automatically reverse the conviction where the surrounding facts and circumstances, including [Baca's] background and conduct, demonstrate that [he] actually understood his right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his right to counsel." Id. at 1389 (citations omitted). See also United States v. Burson, 952 F.2d 1196 (10th Cir.1991), cert. denied, --- U.S. ---- (1992); United States v. Williamson, 806 F.2d 216 (10th Cir.1986).
 
 
 30
 In Willie, this court was faced with similar circumstances where a trial court failed to follow the ideal path. The record indicated that at arraignment Willie was notified of the charges against him; that he submitted at least ten pro se petitions to the court; and that Willie refused to accept any court appointed counsel. Under these circumstances, this court held that "even though the [trial] court failed to make a comprehensive and probing formal inquiry into the knowingness and intelligence of [the defendant's] waiver, looking at the circumstances as a whole, the facts on the record are sufficient in this case to establish that [the defendant] intelligently, knowingly, and voluntarily waived his right to counsel." Willie, 941 F.2d at 1391.
 
 
 31
 Although the trial court did not engage in the ideal litany with Baca, the record as a whole indicates that Baca understood his right to counsel and that he knowingly and intelligently waived counsel. At the arraignment, Baca was notified of the charges against him; he assured the court personally that he had received a copy of the grand jury indictment; and, through his counsel at that time, he waived a formal reading of the charges. (Tr. at 2). When the issue was raised regarding Baca's wish to proceed pro se, Baca stated that he did not want an attorney and "would like to proceed Pro Se." (Tr. at 3). The court then inquired into Baca's educational background. Baca responded that he had a tenth grade education, that he had educated himself while incarcerated for approximately 15 years, and he had "been allowed to represent [him]self in District Court matters and in the First Judicial District Court." Id. The court then advised Baca of his right to counsel and that he must waive his right in a "knowing and intelligent manner." Id. at 4. In addition, Baca's attorney informed the court that Baca had schooling as a paralegal.
 
 
 32
 During the February 29, 1988, hearing, the court again probed into Baca's waiver of his right to counsel and specifically warned Baca of the hazards of proceeding pro se. In response to the prosecution's concerns over Baca's 1974 and 1976 incompetency adjudications, Baca assured the court that he was competent and stated that he had been adjudicated competent to stand trial and to represent himself as recently as 1985. (Tr. at 11). Baca continued to assert his competence up to and until the morning of trial on October 12, 1988.
 
 
 33
 Baca is no stranger to the legal system. From his arraignment on February 16, 1988, until the day of his trial on October 12, 1988, Baca unequivocally insisted on proceeding pro se, refused to fully utilize the services of standby counsel, and filed nine motions, through himself and standby counsel. Under the totality of the circumstances, we hold that Baca understood his right to counsel and knowingly and intelligently waived his right.
 
 III.
 
 34
 Baca alleges that he was denied his right to a speedy trial when the Supreme Court of New Mexico granted the prosecution a two month extension of time in which to try the case.
 
 
 35
 A speedy trial issue is a mixed question of law and fact. Glidewell v. Burden, 822 F.2d 1027, 1028 (11th Cir.1987), cert. denied, 484 U.S. 1018 (1988). A presumption of correctness applies to state court findings of fact; whereas, the legal question is reviewed de novo. Id. at 1028-29.
 
 
 36
 In Barker v. Wingo, 407 U.S. 514, 529-30 (1972), the Court recognized that a defendant's right to a speedy trial cannot be established by any inflexible rule but must be determined on an ad hoc basis by balancing the conduct of the prosecution against that of the defendant. The Court set out four factors to be considered in determining whether there has been a violation of a defendant's right to a speedy trial: (1) the length of the delay; (2) the reason(s) for the delay; (3) the defendant's assertion(s) of his right; and (4) prejudice to the defendant. Id. at 530. Prejudice to a defendant in the speedy trial context may arise from (1) oppressive pretrial incarceration; (2) anxiety and concern of the defendant; and (3) impairment of the defense. Barker, 422 U.S. at 532; Gutierrez v. Moriarty, 922 F.2d 1464, 1472 (10th Cir.), cert. denied, 502 U.S. 844 (1991).[5]
 
 
 37
 The district court found that the ten and one-half month delay from Baca's initial arrest on November 23, 1987, to his trial on October 12, 1988, was sufficiently lengthy to trigger a speedy trial analysis,[6] see Barker, 422 U.S. at 530 ("[t]he length of the delay is to some extent a triggering mechanism"), and that the delay was caused by a crowded docket which weighs slightly against the state. (Record on Appeal Vol. I, Doc. 64 at 8). See Gutierrez, 922 F.2d at 1472 (twelve month delay not inordinate but sufficient to trigger speedy trial analysis). However, the court determined that "there was no violation of Baca's Sixth Amendment right to a speedy trial." Id. at 9. The court found that the period of incarceration was not inordinate, Baca had presented no evidence of anxiety, Baca did not timely attempt to secure the testimony of his two witnesses through standby counsel, the content of these witness' testimony is purely speculative, and Baca was not unduly prejudiced. Id.
 
 
 38
 We are persuaded by this analysis. The length of the delay was not inordinate, the reason for the delay weighed only slightly against the state, Baca's assertion of right weighed slightly in his favor, and he has failed to establish any prejudice arising from the delay. See United States v. Muniz, 1 F.3d 1018 (10th Cir.) (no showing that government intended to delay trial in order to prejudice defendant or that defendant was actually prejudiced), cert. denied, --- U.S. ---- (1993); United States v. Davis, 1 F.3d 1014 (10th Cir.1993) (no violation of constitutional right to speedy trial where much of the delay involved hearing defendant's pretrial motions, investigating allegations that defendant attempted to bribe a witness, and preparing superseding indictment); United States v. Bagster, 915 F.2d 607 (10th Cir.1990) (no prejudice demonstrated by lapse of time). Under these circumstances, Baca has not made out a claim of unconstitutional pretrial delay.
 
 
 39
 Finally, Baca asserts that he has been denied his right to speedy trial under the due process clause. We recognize that the due process clause plays a limited role in protecting against oppressive delay. See United States v. Lovasco, 431 U.S. 783, 789 (1977). However, in order to prevail on a due process claim, a defendant must show actual prejudice. A due process violation "requires a specific showing of identifiable prejudice to the accused affecting his substantial rights." United States v. Comosona, 614 F.2d 695, 697 n. 3 (10th Cir.1980) (citations omitted). Baca has made no such showing.
 
 
 40
 AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 *
 The Honorable Richard Owen, Senior Judge, United States District Court for the Southern District of New York, sitting by designation
 
 
 [2]
 See State v. Baca, No. 25129 (Nov. 20, 1974), and In re Baca, No. 25129 (April 18, 1976)
 
 
 [3]
 The test for determining whether a defendant is competent to stand trial is: (1) whether the defendant "has sufficient present ability to consult with his lawyers with a reasonable degree of rational understanding," and (2) "whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)
 
 
 [4]
 This standard is derived from the Illinois statute at issue in Pate v. Robinson, 383 U.S. 375, 385 (1966). As the Court noted in Drope v. Missouri, 420 U.S. 162, the Illinois statute was constitutionally adequate if followed. In Drope, the Court framed the question as whether the information available to the trial court created a "sufficient doubt" of the defendant's competence to stand trial to require further inquiry. Id. at 180
 
 
 [5]
 New Mexico follows the same speedy trial analysis. State v. Kilpatrick, 104 N.M. 441, 722 P.2d 692 (N.M. Ct.App.), cert. denied, 104 N.M. 378, 721 P.2d 1309 (1986)
 
 
 [6]
 Baca was originally arrested on November 23, 1987; released on December 23, 1987; indicted on February 2, 1988; re-arrested on February 4, 1988; and tried on October 12, 1988